### BOOKER v. WINGO.

1. Findings of fact by a referee, concurred in by the Circuit Judge, approved, such findings not being manifestly against the weight of the evidence.

2. In 1885, a married woman executed a deed of her separate estate and, as surety for her husband, a note for $500, upon the consideration of the grantee (and payee) assuming the payment of her husband's debts and releasing her father from his liability as surety therefor, and upon the further consideration of money stolen from the grantee by the grantor's husband and of the grantee's promise to use his influence to have a prosecution against her husband for larceny stopped. Eighteen months afterwards she filed her complaint for the cancellation of this deed and note. *Held*, that the court would not grant her any relief as to the deed, but would perpetually enjoin suit against her on the note, as she had no power to make it.

3. Although plaintiff could have made her defence to this note if sued at law, still equity may enjoin suit thereon.

4. Costs in equity are within the discretion of the trial judge as a part of the relief granted, and his ruling will rarely be disturbed.

Only result concurred in.

Before NORTON, J., Spartanburg, October, 1887.

This was an action by Martha J. Booker against Robert Wingo. The opinion states the case.

*Mr. Charles P. Barrett*, for plaintiff.

*Messrs. J. S. R. Thomson* and *Nicholls & Moore*, contra.

July 5, 1888.  The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. It seems that in 1884, J. A. Booker, a merchant of Welford, County of Spartanburg, failed in business. He made an assignment of all his property to the defendant, Wingo, for the benefit of his creditors. Booker seems to have thought that if he had a little time, he could pay out, and he prevailed upon the defendant and Samuel Morgan, the father of his wife, the plaintiff, to become his sureties for his debts; and he continued the business as agent of defendant, assignee. Booker alone knew the combination of the safe, in which the defendant alleged that he had $1,200. Shortly afterwards Booker mysteriously disappeared, carrying with him, as the defendant alleged, the said $1,200. The defendant followed him to Birmingham, Alabama, where he found that Booker had deposited $800 in bank under the name of "John Davis." After they returned, Wingo prosecuted Booker for stealing the $1,200, declaring that all he wanted was to be secured against loss.

The following arrangement was made (one of her brothers acting for Mrs. Booker): Wingo entered into bond to pay the debts of Booker (some $4,300), and in consideration thereof, Mrs. Booker conveyed the two lots in contention, and in addition she and her brother, W. L. Morgan, as sureties for J. A. Booker, her husband, signed a promissory note to Wingo for $500. It was not "nominated in the bond" that Wingo was to stop the prosecution against the husband for larceny (and there was some dispute as to the facts), but most probably that was the understanding. At all events, Wingo, through a check signed by Booker in the name of "John Davis," got the money on deposit in Birmingham, and the prosecution was stopped. Wingo was let into the possession of the lots, and in all respects carried out his part of the agreement; but on October 27, 1886, nearly two years after the arrangement made in March, 1885, the plaintiff, Martha J. Booker, commenced this action to have declared void and delivered up the aforesaid deed of the lots and the promissory note for $500, which she signed as one of the sureties for her husband, on the grounds that she was a married woman at the time, and did not freely and voluntarily sign the papers, but was induced to do so under threats by duress, and in order to save her husband from being prosecuted for larceny, &c.

The cause was referred to S. J. Simpson, Esq., as special ref-
eree, who took much testimony and made the following condensed
and clear report of his findings: "1. As matter of fact, I am not
satisfied by a preponderance of evidence, certainly not by such a
clear preponderance as ought to be produced in a case like this,
that the defendant ever used towards plaintiff any threats of pro-
secuting her, or was guilty of any other conduct towards her such
as would have the effect of putting her under duress before or at
the time of the execution of the deed and note.    II.  I am satis-
fied that one of the main considerations for the agreement be-
tween plaintiff and defendant was, that defendant should use his
influence to have the prosecution stopped, which was then pend-
ing against plaintiff's husband," &c.    Upon these findings of
fact, he recommended that the relief sought as to the conveyance
of the lots should not be granted, but that the plaintiff, being a
married woman, had not the power to give a valid note as surety
for her husband, and therefore she is not responsible for the $500
note, and that so far as the plaintiff was concerned, the defend-
ant should be perpetually enjoined from collecting said note.

Upon exceptions of both plaintiff and defendant to this report,
the matter came up for a hearing before Judge Norton, who con-
curred in the result of the report of the referee, and decreed as
follows: "The deed described in the pleadings is adjudged valid,
having been followed by a change in possession, and acquiesced
in for over nineteen months, and having been originally procured
upon the consideration of the compounding of a felony, volunta-
rily and without duress of imprisonment, or threats as to either
the husband or wife.    Plaintiff and defendant are in *pari delicto*.
The contract is executed.    The law will aid neither.    The
note described in the complaint is an executory contract, and is
upon the same consideration as the deed, and as to plaintiff could
not be collected, but the court would make no order in reference
to it on that ground.    The plaintiff, at the time of the execution
of the note, was a married woman, and it was not given 'as to
her separate estate.'    It is therefore adjudged, that the defend-
ant be perpetually enjoined from suing plaintiff on said note.    It
is further adjudged, that the plaintiff have judgment for her costs

and disbursements against the defendant," &c.  From this decree
both parties appealed.

PLAINTIFF'S EXCEPTIONS.  "I. In finding that the plaintiff
executed the deed voluntarily, and that the defendant offered
neither duress of imprisonment, nor duress *per minas,* to either
the plaintiff or her husband, in order to procure the same.

"II. In not finding that the deed was procured by the defend-
ant by the threats of imprisonment of the plaintiff and her hus-
band on the charge of grand larceny, of which they were inno-
cent.

"III. In not finding that the deed was procured by the defend-
ant by the imprisonment of the plaintiff's husband on charge of
grand larceny, of which her husband was innocent.

"IV. In not finding that the defendant procured the impris-
onment of the plaintiff's husband solely for the purpose of secur-
ing immunity from certain of her husband's debts for which he
was surety, and that the plaintiff executed the deed in order to
relieve her husband from such imprisonment.

"V. In not finding that, even though the imprisonment of
plaintiff's husband in its inception was for the purpose of pro-
moting the ends of public justice, yet the defendant subsequently
used such imprisonment to secure immunity from certain debts
of the plaintiff's husband for which he was surety, and that the
plaintiff executed the deed to relieve her husband from such im-
prisonment.

"VI. In not finding that, even though there was no duress,
the deed was procured by undue influence.

"VII. In not finding that the deed, even though it was not
procured by threats or imprisonment, was given to the defendant
for no consideration save the settlement of a pending public pro-
secution against the plaintiff's husband on the charge of grand
larceny ; and that the plaintiff and defendant were not *in pari
delicto,* but the former acted under circumstances of oppression,
imposition, and hardship exercised by the defendant.

"VIII. In not finding that, even though the deed was not pro-
cured from the plaintiff by the defendant by threats or imprison-
ment, and even though the defendant did not act under circum-
stances of oppression, imposition, or hardship, yet the main and

inspiring purpose was to settle the pending public prosecution for grand larceny against her husband, and to relieve him from the consequences thereof, and the defendant used the occasion to extort the deed from the plaintiff, which was unjust and unconscionable.

"IX. In not finding that the deed was given by the plaintiff, not as to her separate estate and for its benefit, but to procure the payment of her husband's debts, which she was neither legally nor morally bound to pay," &c.

DEFENDANT'S EXCEPTIONS. "I. In adjudging that the plaintiff is entitled to relief against the note in controversy.

"II. In adjudging costs against the defendant.

"III. In not sustaining defendant's exceptions as to the rulings of the referee upon testimony.

"IV. In not holding that the other obligors on the note were necessary parties in the action to enjoin the collection ·of or to cancel said note.

"V. In not finding that the complaint should be dismissed, on the ground that the testimony wholly failed to sustain the allegations of the complaint.

"VI. In not dismissing the complaint with costs.

"VII. In not finding that the only consideration of the deed and note was a release of a *bona fide* indebtedness of J. A. Booker and an assumption of J. A. Booker's liabilities, and an agreement to indemnify Samuel Morgan as surety for said J. A. Booker.

"And the defendant further gives notice that he will urge that the Circuit decree be sustained dismissing the complaint as to the deed, on grounds additional to those stated by the Circuit Judge, viz., that there was good consideration for the conveyance ; that the conveyance was made voluntarily and willingly ; and that the plaintiff never offered to put the defendant *in statu quo.*"

It will be observed that the principal burden of complaint made by the numerous exceptions of the plaintiff is as to the findings of fact—that there was error in not finding that the plaintiff, in executing the deed of the lots and the note, acted under duress, compulsion, oppression, imposition, undue influ-

ence, &c.   Upon this subject the referee found that defendant "never used towards plaintiff any threats of prosecuting her, or was guilty of any other conduct towards her such as would have the effect of putting her under duress before or at time of the execution of the deed and note."   In the result of this finding the Circuit Judge concurred.   Under these circumstances the rule is well established, that this court will not disturb the finding, unless it is manifestly against the weight of the evidence. We have looked through the evidence carefully, and while we discover that there is much conflict, we cannot say that upon the whole it fails to support the finding.   On the contrary, we agree with the referee and Circuit Judge, that there was no duress or oppression or undue influence brought to bear upon the plaintiff; but that she acted under the advice of her brothers and friends, and executed the deed and note freely and voluntarily, influenced, it may be, by her understanding that, the arrangement being carried out, the defendant would "use his influence to have the prosecution stopped, which was then pending against her husband."

This at once reduces the whole case to two questions: First, whether Martha J. Booker, being a married woman, had the power to execute the deed of her own property and make herself liable as one of the sureties of her husband on the $500 note; and if so, second, whether the fact, besides other considerations, that there was mingled in the mind of Mrs. Booker the additional object of relieving her husband from the charge of larceny, so vitiated the whole transaction as to enable her, after it was fully executed, to have it set aside and declared utterly null and void?

As to the conveyance of the lots.   Without going again into the general subject of the rights of married women, so recently discussed in this court, or attempting to follow the elaborate and learned argument of the plaintiff's attorney, we cannot doubt that, under the constitution and laws of the State, a married woman may dispose of her separate estate the same as if she were unmarried; and that such power is not limited to "a sale pure and simple" for valuable consideration, necessarily flowing to her separate estate.   If left to act freely, voluntarily, and without undue influence, she may, if she chooses, dispose of it

by gift or otherwise. See *Oliver* v. *Grimball*, 14 S. C., 570, and *McLure* v. *Lancaster*, 24 S. C., 273. But the deed of the plaintiff was not without consideration, both good and valuable, in procuring the payment of her husband's debts and in relieving her father, Samuel Morgan, from all responsibility as surety therefor.

It is urged, however, that there was another inducement operating on the mind of Mrs. Booker—that at least one of her objects was to supersede and stop the trial of her husband for larceny, which, as claimed, tainted and rendered void the whole transaction. It is true that the law does not tolerate the abuse of criminal process, issued without sufficient cause or lawful authority, as a means of collecting debts; and that contracts made solely on a compromise of indictments for crime will, as a rule, be set aside. *Corley* v. *Williams*, 1 Bail., 588; *Williams* v. *Walker*, 18 S. C., 583. But it is recognized that there are exceptions. It was held, in the case of *Banks* v. *Searles* (2 McMull., 356), that a note given in part as compensation and partly to compromise a prosecution for assault and battery is not void, the consideration being adequate to sustain the action. In that case, Judge O'Neall said: "There is in every assault and battery a public offence and a civil injury. The 'compensation' of the latter has always been recognized by the imposition of a much less punishment when it has been made." There is also a civil injury in larceny, and we do not clearly see why the same principle should not apply to it, at least to the extent of "compensation" for the property appropriated.

Assuming, however, that the inducement was illegal, to the extent of the declaration of the defendant that he "would use his influence to have the prosecution stopped," does it necessarily follow that the whole transaction must be declared void *ab initio?* We do not think so. The plaintiff, under the advice of her friends, entered into the arrangement voluntarily. After the deed was executed and possession given, she acquiesced for over eighteen months, and, in the mean time, the defendant had fully executed his part of the agreement. We concur with the referee and Circuit Judge, that the plaintiff and defendant were *in pari delicto*, and that equity will not now, at her instance, declare the

whole transaction void.  It is impossible at this late day to restore the *status quo,* and there was no offer to do so.

"Whenever a contract or other transaction is illegal and the parties thereto are, in contemplation of law, *in pari delicto,* it is a well settled rule, subject only to a few special exceptions, depending upon other considerations of policy, that a court of equity will not aid a *particeps criminis,* either by enforcing the contract or obligation while it is yet executory, or by relieving him against it by setting it aside, or by enabling him to recover the title to property, which he has parted with by its means. The principle is thus applied, when the illegality is merely a *malum prohibitum,* and when it is a *malum in se,* as being contrary to public policy or to good morals.  Among the latter class are agreements and transfers, the consideration of which was compounding of a felony, gambling, false swearing," &c.  See 1 *Pom. Eq. Jur.,* section 402, and authorities in note.

As to the note for $500.  Without repeating the matter of consideration, which was the same as for the conveyance of the lots referred to above, it is enough to say that the signing of the note as one of the sureties of the plaintiff's husband was a general personal engagement on her part, without "reference to her separate estate," and was void.  This court has repeatedly held that, since 1882, such a contract is beyond the power of a married woman, and therefore void.  See *Habenicht* v. *Rawls,* 24 S. C., 461; *Aultman* v. *Rush,* 26 *Id.,* 519; *Gwynn* v. *Gwynn,* 27 *Id.,* 525.

It is true that the defence could have been made at law; and it is insisted that there was no equity in the case. and therefore the complaint should have been dismissed as to the note, as well as to the deed for the lots.  It will be noticed that the Circuit Judge did not direct that the note should be surrendered and cancelled, but "that the defendant be perpetually enjoined from suing plaintiff on said note."  The note remains precisely as it was, as to the other signers.  It was a negotiable note void as to the plaintiff.  It might be transferred into the hands of an innocent holder; and we think the plaintiff had the right in equity to have it perpetually enjoined as to herself.  "Whenever the circumstances are such that the defensive remedy at law would

not be equally certain, perfect, and adequate, this jurisdiction will be exercised.    The equitable relief so enforced does not violate the general maxim concerning parties *in pari delicto;* on the contrary, it carries that maxim into effect.    *   *   *   The remedy by cancellation or injunction, under the circumstances, is simply the equitable proceeding identical with the setting up the illegality to defeat a recovery at law, and thus to get rid of the contract as a binding executory obligation.    The parties are left undisturbed as to their property rights."    See 2 *Pom. Eq. Jur.,* section 940, and authorities in the notes.

Costs in equity are within the discretion of the trial judge, as a part of the relief granted.    His ruling will rarely be disturbed.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE MCIVER concurred in the result.