## CARROLL v. THOMAS.

MARRIED WOMAN—DEED.—An absolute deed of a married woman in 1890 for good consideration carries the estate to the grantee without the *intention* to convey her separate estate being expressed therein. *Brown* v. *Bechman,* 49 S. C., 546, *distinguished from this. 19 Stat., 819, as to conveyances by married women, construed.*

Before WATTS, J., Barnwell, April 27, 1898. Affirmed.

Action by Julia R. Carroll against Charles B. Thomas, for possession of land. From judgment dismissing complaint, plaintiff appeals.

*Messrs. Bellinger, Townsend & O'Bannon,* for appellant, cite: *Act of 1887 repeals the act of 1882:* 13 S. C., 3; 14 Rich., 163; 11 Wall., 92; 2 B. Mon., 146; 33 At., 846; 55 Pa. St., 126; 3 How., 636; 2 Cir. Ct. R., 448; 16 S. C., 91; 49 S. C., 546; 17 S. E. R., 361. *Construction of act of 1887:* 18 S. E. R., 130; 19 S. E. R., 137; 43 S. C., 294; 45 S. C., 657; 49 S. C., 546; 36 S. C., 468; 38 S. C., 124.

*Messrs. S. G. Mayfield* and *Izlar Bros.,* contra. *The latter* cite: *A married woman has full power to alienate her*

*separate real estate:* Art. 14, sec. 8, Con. 1868; Gen. Stat., 2036; 26 S. C., 524; 19 St., 819; 38 S. C., 438, 519; 39 S. C., 525; 43 S. C., 294; 45 S. C., 657.

March 27, 1899.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to recover possession of certain real estate; and a trial by jury having been waived, the case was heard by his Honor, R. C. Watts, upon an agreed statement of facts set out in the decree of the Circuit Judge, a copy of which appears in the "Case." From this statement it appears that the plaintiff, on the 2d day of October, 1890, executed her deed, whereby she conveyed to her son, Francis F. Carroll, jr., in consideration of natural love and affection, the land in question; that thereupon the said Francis F. Carroll, jr., entered into possession of said land, executed a mortgage thereon, under which the land was subsequently sold and bought by the defendant, who is now in possession, claiming title under the said Francis F. Carroll, jr.  It further appears that the plaintiff, at the time she executed said deed to her son, was and is yet a married woman, the wife of Francis F. Carroll, sr., but that the defendant, at the time he bought the land under the proceedings to foreclose said mortgage, had no notice that the plaintiff was a married woman.  The deed from plaintiff to her son is in the usual form, and contains no formal declaration of the grantor of her intention to convey her separate estate. The Circuit Judge held that said deed was a valid conveyance, and rendered judgment dismissing the complaint.

From this judgment plaintiff appeals upon the several grounds set out in the record, which need not be repeated here, as they all, substantially, raise the single question, whether the deed from plaintiff to her son was effectual to convey the land described therein.  The contention on the part of the plaintiff is that, by reason of the absence of any formal declaration in the deed of the grantor's intention to convey her separate estate, the deed is ineffectual to convey

such estate, under the provisions of the act of 1887—19 Stat., 819. That act is entitled "An act to declare the law relating to the separate estate of married women." In the first section of said act—the only·one which is pertinent to the present inquiry—the language used is as follows: "All conveyances, mortgages and like formal instruments of writing, affecting her separate estate, executed by a married woman, shall be effectual to convey or charge her separate estate, whenever the intention so to convey or charge such separate estate is declared in such conveyances, mortgages or other instruments of writing." In the first place, it will be observed that the legislature, by the language used in the title of this act—"An act to *declare* the law," &c.— indicated its intention, *not* to change or amend the law as it had been previously written, but to declare what should be the true intent and meaning of the language as it was previously written. This kind of legislation was resorted to in England mainly for the purpose of reviving old customs, which had fallen into disuse or had become disputable, and sometimes for the purpose of explaining the meaning of previous statutes, as to which doubts had arisen. But in this country, where we have written constitutions, in which the limits between the several departments of the government are defined, and each is forbidden to invade the province of the other, declaratory statutes are not common and are not of much expediency. Potter's Dwar. on Stat., 68-70, and note 28, on page 221. We have, therefore, referred to the language used in the title of the act of 1887, for the purpose of showing that the legislature, by the use of such language, indicated its intention, not so much to alter or amend the language of the previous law, but to declare what was the true meaning of such language, in the future, because, of course, under the provisions of our Constitution, the legislature would have no power to affect previous transactions; and it must be assumed that it did not intend to attempt to exercise any such power. In the second place, it will be observed that the language used in the act is of an affirma-

tive and not of a negative character. While it declares that all conveyances, mortgages and like formal instruments in writing, affecting the separate estate of a married woman, shall be effectual to convey or charge her estate, if the intention so to convey or charge such estate is declared in such conveyance, mortgage or other instrument, it does *not* declare that if such declaration is not inserted in such conveyance or mortgage, it shall not be effectual to charge or convey such separate estate. Accordingly, it has been held in *Gibson* v. *Hutchins,* 43 S. C., at pages 294-5, that even where no such declaration appears in the mortgage sought to be enforced against the separate estate of a married woman, and it otherwise appears that the contract was, in fact, for the benefit of her separate estate, the mortgage will be valid. In the next place, it is very doubtful, to say the least of it, whether the legislature intended by the word "conveyances," as used in the act of 1887, to apply the same to deeds absolute in form, and not intended to be securities for a debt created by the contract of a married woman, as was the case with one of the instruments under consideration in the case of of *Gibson* v. *Hutchins, supra.* For the Constitution of 1868, then of force, expressly declared that the separate property of a married woman "may be bequeathed, devised or alienated by her the same as if she were unmarried;" and this power could not be taken away from her, or in any way abridged by a statute. This case is very different from that of *Brown* v. *Pechman,* 49 S. C., 546, cited by counsel for appellant. For in that case a married woman, in 1869, undertook to convey her estate of inheritance, without complying with the requirements of the act of 1795, then in force, prescribing the only mode by which a married woman could convey her estate of inheritance; and it was held that while the Constitution of 1868 invested her with the power to convey her separate estate, yet in exercising such power she must comply with the requirements of the then existing law, as to the only mode in which such power could be exercised. Now, however, since the repeal of the

provisions of the act of 1795, prescribing the only mode in which a married woman could effectually convey her estate, by the act of 1873, if not by the act of 1870, referred to in *Brown* v. *Pechman,* there is no statute, so far as we are. informed, prescribing the only mode by which a married woman can convey her separate estate; for, as we have said, the act of 1887, at most, only provides that when a conveyance executed by a married woman contains a certain declaration of intention, it shall be effectual, but it does not provide that it shall not be effectual unless it contains such declaration, and accordingly we find that in the case of *Gibson* v. *Hutchins, supra,* it has been expressly held that the absence of such declaration will not necessarily defeat the conveyance or mortgage. See, also, *Reid* v. *Stevens,* 38 S. C., 526. A brief review of the legislation in respect to the rights and powers of married women, and the judicial construction placed upon such legislation prior to the passage of the act of 1887, will show clearly the true intent and purpose of that act. Inasmuch as the Constitution of 1868 did not, in terms, confer upon a married woman the power to contract, the legislature, shortly after the adoption of the Constitution, by the act of 1870, conferred upon a married woman the power "to contract and be contracted with in the same manner as if she were unmarried." This unlimited power to contract was, by the General Statutes of 1882, so restricted as to limit her power to contract only, "as to her separate estate." Very numerous controversies arose under the law as thus amended, and many decisions were made, which are so familiar to the profession that they need not be cited, whereby it was settled that a married woman had no power to make any contract, no matter what may have been her intention, except as to her separate estate. See *Scottish Co.* v. *Mixson,* 38 S. C., at pages 437-8, for a fuller and more complete review of the law prior to the passage of the act of 1887, where it is said: "The act of 1887 was manifestly designed to effect some change in the previous law as to the contracts of married women, or at least

in the construction which had been placed by the Court upon such law." And in the same case it is said that the change effected was "not only by making it a question of *intention* instead of a question of *power*, but declaring how the intention should be conclusively manifested." It seems to us, therefore, that the real object of the act of 1887 was to provide an easy mode by which parties, dealing with a married woman, could remove the question as to the intention of the married woman from the domain of controversy, by simply inserting in the instrument sought to be enforced against her the declaration provided for by the act. We are also inclined to the opinion that the word "conveyances," as used in the act, meant only such conveyances as were intended to be securities for the performance of a contract entered into by a married woman, and did not mean conveyances not only absolute in form, but also in effect. For it will be remembered that all of the cases which had arisen between the passage of the act of 1882 and the act of 1887, were cases in which the question was as to the liability of the married woman upon some instrument of writing purporting to charge her estate with the payment of a debt intended to be secured thereby; and not a single one, so far as we are informed, in which the question was as to the validity or effect of a conveyance, not only absolute in form, but intended to be so in effect; and it is but reasonable to infer that an act designed to settle the law as to questions which had been so much controverted, was not intended to cover any other subjects except those which had given rise to so much controversy. But be this as it may, it seems to us that, under the express provisions of the Constitution of 1868, which was of force at the time of the execution of the deed in question, the plaintiff, though a married woman at the time, had the same power to execute this deed as if she were then an unmarried woman. It does not seem to us that in any view of the case, there was any error on the part of the Circuit Judge in holding the deed from the plaintiff to her son to be a good and valid conveyance.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.