BOWEN v. DAY.

1. MARRIED WOMEN—MORTGAGES—ESTOPPEL.—In 1893, the wife of one partner at instance of her husband conveyed a tract of land to the other partner in consideration of the pro rata share of firm debts owed by her husband and assumed by grantee. Thereafter the land, at instance of the wife, was reconveyed to her, and she executed her notes for the original amount of the consideration, secured by a mortgage of the land, under agreement that the mortgagee should apply the payments on the notes to a senior mortgage debt, and then to the pro rata share of firm debts due by the husband, and pay the remainder to the mortgagor. Wife afterward conveyed the land to husband and died leaving as her heirs her husband and two infants; *held,* that the transaction was not void under the married woman's law, and that mortgagee was entitled to foreclosure of his mortgage for balance due on senior mortgage debt and pro rata share of firm debts due by husband, and that husband is estopped from assailing the transaction.

2. PARTNERSHIP.—ACCOUNT of one partner for personal services and teams in partnership business disallowed because personal services of both partners and their teams were used in the work and there was no agreement that either should charge for them.

Before DANTZLER, J., Pickens, November, 1903. Affirmed.

Action by R. E. Bowen against Elias Day *et al.* From Circuit decree, Elias Day appeals.

*Messrs. J. E. Boggs* and *H. J. Haynsworth,* for appellant, cite. *Married woman could not in 1893 secure or guarantee the payment of her husband's debts:* 20 Enc., 897; 27 S. C., 525; 30 S. C., 159; 31 S. C., 420.

*Mr. J. P. Carey,* contra, cites: *Deed of married woman to pay husband's debts is valid:* 29 S. C., 116; 52 S. C., 513. *Husband is estopped from assailing the transaction:* 33 S. C., 206; 35 S. C., 516. *Evidence required to warant finding that deed was intended as a mortgage:* 31 S. C., 276; 20 Ency., 938; 52 S. C., 54; 54 S. C., 184.

April 19, 1905. The opinion of the Court was delivered by

Mr. CHIEF JUSTICE POPE. This is an action brought for the foreclosure of a mortgage given by Jane Day to the plaintiff on August 8, 1893. The complaint alleges that Mrs. Jane Day, on the 8th day of August, 1893, made and delivered to the plaintiff four promissory notes, each in the sum of $553.75, one due January 1, 1894; one due January 1, 1895; one due January 1, 1896, and other due January 1, 1897, each bearing interest at the rate of eight per cent. per annum, interest to be computed annually from the first day of January, 1894. That on the 8th day of August, 1893, the said Mrs. Jane Day, to secure the payment of said notes, executed and delivered to the plaintiff her deed, and thereby conveyed by way of mortgage to the plaintiff, his heirs and assigns, certain lands in the county of Pickens and State aforesaid, containing one hundred acres, and having such boundaries as are set forth in the complaint. That said mortgage was duly recorded on the 4th day of January, 1894; that the said Mrs. Jane Day paid off the note which was due on the first day of January, 1894, and paid on the note which was due January 1, 1895, $182.65, on November 18, 1895; and paid on the note due January 1, 1896, the sum of $38.30 July 9, 1897; and also on November 8, 1898, the sum of $96. That the condition of said mortgage has been

broken.   That Mrs. Jane Day died on the first day of March, 1899, leaving as her heirs at law, the defendants, her husband, Elias Day, and her two children, Jack C. Day and Bertha Day, both of which children are infants under twenty-one years of age.   That in 1892, Mrs. Jane Day made and delivered her mortgage to the defendant, James' H. Morgan, to secure the sum of $1,000, loaned to her by him, which mortgage is duly recorded.   The two infant defendants made their answer in due time; the other defendant, Elias Day, in his answer, set up the following facts as constituting the history of the transaction between his wife and Col. Bowen.

For a first defense, he denies the allegations of the complaint, except the ninth.

As a second defense, that on or about February, 1893, Jane Day, who was a wife of the defendant, Elias Day, made a deed of the tract of land described in the complaint, to the plaintiff for the alleged consideration of $2,115, but the real consideration was to secure and indemnify the plaintiff against any more than his share of the sum of $2,115, which was then due and owing by the plaintiff and the defendant, Elias Day, as partners doing business under the firm name of Elias Day & Co., said sum being the total amount of money owed by said firm to various persons on account of money and materials furnished to said firm; that Jane Day neither then nor at any time owed the plaintiff any amount whatever; that no part of such sum was for the benefit of the separate estate of the said Jane Day; that said deed was made and given to the plaintiff in order that he might get the time of payment of said debts extended until the money could be procured by said firm to pay its debts, in which event said lands was to be reconveyed by said plaintiff to said Jane Day; that said Jane Day, becoming dissatisfied with the transaction as it then stood, requested plaintiff to reconvey, which the plaintiff accordingly did on August 8, 1893; and that on that day the said Jane Day made and delivered to R. E. Bowen, in lieu of said first mentioned deed, her four

promissory notes of $553.75 each, and secured said notes by a mortgage on said land executed on that day; that in making said notes above mentioned, secured by said mortgage, the said Jane Day in truth and in fact simply promised to pay, guaranteed, or stood surety for the debts of her husband, Elias Day, as a member of the firm of Elias Day & Co., in which she neither then, or at any other time, ever had any interest or connection with whatever.

For a third defense, the defendant alleges that as to land described in said agreement, the plaintiff has no lien by reason of said agreement and the payments made in pursuance thereof, and that plaintiff is by same estopped and should not foreclose his said mortgage as to said land, which estoppel is hereby pleaded; that on the 22d day of March, 1897, and on July 2, 1898, the said Jane Day conveyed by way of deeds for valuable consideration, to her husband, Elias Day, one of the defendants herein, all her interests in and title to said lands mentioned in the mortgage dated August 8, 1893, and at the time of the death of said Jane Day, the said Elias Day was seized and possessed of said last mentioned lands and is now so seized and possessed. The defendant demands the first mentioned deed and said note and mortgage be set aside and delivered up to this Court to be cancelled.

An order was made requiring C. E. Robinson, Esq., to take and report the testimony to the Court. Witnesses were examined and the testimony, both oral and documentary, was submitted to the Court. The cause came on to be heard before his Honor, Charles G. Dantzler, who rendered his decree on November 10, 1903, which is as follows:

"This is an action to foreclose a mortgage given by Jane Day to the plaintiff on the eighth day of August, 1893. It was referred to a special referee to take the testimony only and report the same to the Court. On the first day of February, 1893, Jane Day executed and delivered to the plaintiff a deed for a tract of land containing one hundred acres, more or less, and described in the said deed. On the eighth day of

August, 1893, the plaintiff conveyed by deed the said tract of land to the said Jane Day, at which time Jane Day gave to the plaintiff her four notes, each in the sum of $553.75, and a mortgage on the tract of land conveyed to her by him to secure the payment of these notes. On the thirteenth day of February, 1892, the said Jane Day gave a note to the defendant, James H. Morgan, for the sum of $1,000, and secured the same by a mortgage on one hundred and nineteen acres of land, which includes the tract of one hundred acres covered by the mortgage given to the plaintiff. During the year 1899, Jane Day departed this life intestate, and no administration has been had on her estate, and she left as her heirs at law, her husband, the defendant, Elias Day, and her children, the other defendants, except James H. Morgan. On the 22d day of March, 1897, Jane Day conveyed to the defendant, Elias Day, one hundred acres of the mortgaged lands, and eighteen acres on the 2d day of July, 1898.

"The heirs at law of Jane Day answered the complaint, in which they allege that the deed made to the plaintiff by Jane Day was to secure or indemnify the plaintiff against not more than Elias Day's share of the debts of the firm of Elias Day & Co., and that she was at the time a married woman, and that said deed was given to the plaintiff in order to secure the payment of said debts. They further allege that the plaintiff was to reconvey the land to Jane Day on the payment of these debts. The defendants further allege that on August 8, 1893, the notes and mortgages then given by Jane Day to the plaintiff, were for the debts of Elias Day, and that she being a married woman, said notes and mortgages are null and void.

"It is contended on the part of the plaintiff that by the deed of February the first, 1893, Jane Day sold this tract of land to the plaintiff, and that the consideration of this deed was the payment of the portion of the debts of Elias Day & Co., which the said Elias Day owed, and the payment of the Morgan mortgage, a valid lien on said property. The plaintiff further contends that on the eighth day of August, 1893,

the said Jane Day purchased the property from the plaintiff as a home and that it then became her property, and that the notes and mortgage were given as a security to the plaintiff for the purchase money of the said land. The contention of the plaintiff, I think, is correct. The deed was from Jane Day to the plaintiff, was regular in form and I think was intended to be a sale of the property and not a security. It certainly conveyed the legal title to the plaintiff. It was under her hand and seal, and on its face a conveyance. She accepted a deed from the plaintiff, dated August the eighth, 1893, containing a statement that the land in question was the same land which the plaintiff purchased from her. In the notes of the same date, she says they are given in the purchase of a tract of land set forth in the mortgage securing the same, and the land is described in the said mortgage as the land that day deeded to her by R. E. Bowen. In the written agreement, bearing the same date as the mortgage, there is a statement that R. E. Bowen has this day sold to Mrs. Jane Day the same tract of land that he purchased from her. It is thus seen that Jane Day herself solemnly treated this deed as an alienation of her property, and lived nearly seven years after it was made without ever raising any question as to the matter, or even complaint, and made payment of over $1,000 on the mortgage debt. The deed to the plaintiff was in form and effect a deed, and solemnly treated as such by Jane Day up to the time of her death. The plaintiff says that the deed was to be absolute, that he bought it and has paid and assumed all the debts which was the consideration of said deed. I think under the testimony in this case, this deed was intended to be what it appears on its face to be, a conveyance of property, and that the consideration thereof was valuable. A married woman ever since the Constitution of 1868, has had the power to alienate her property. Under the decisions of the Supreme Court of this State, a married woman, even before the Constitution of 1895, had the right and power to convey away her property where the consideration is the payment of husband's debts. See the following

32—71

cases: *McLure* v. *Lancaster,* 24 S. C., 280; *Booker* v. *Wingo,* 29 S. C., 116, 7 S. E., 49; *Langston* v. *Smyley,* 38 S. C., 121, 16 S. E., 171; *Philpot* v. *Cantey,* 52 S. C., 513, 30 S. E., 595; *Carroll* v. *Thomas,* 54 S. C., 520, 32 S. E., 497. In Langston *v.* Smiley, it is decided that the power of alienation of her own property given a married woman by the Constitution is not affected by the statutes limiting her power to contract. The case further decides that a married woman can transfer her property on consideration of further indulgence to her son, and assist in paying his debts, and that such transfer is a valid alienation of her property, and passes a good title. She may even alienate her property by gift, if not imposed upon, but left free to act. There is no evidence of any agreement to convey the land back to Jane Day by the plaintiff. On the contrary, the written agreement of August the eighth, 1893, expressly provides that if there was anything left, after the consideration on which she had conveyed the property to the plaintiff was paid, this balance and not the land was to go to her. There is not sufficient evidence to satisfy that the deed of February the first, 1893, was intended as a security and not an alienation. The maker of the deed lived and died without making such claim, and I do not think, under the testimony, such claim can be sustained. If the plaintiff, then, was the owner of the land in question from February the first, 1893, to August the eighth, 1893, as I have held, is he to be put in a worse position, because he sold it back to her, and took the notes and mortgage in question? I think not. I view the transaction of August the eighth, 1893, this way: Jane Day had conveyed the land to the plaintiff on good and valuable consideration, but desired it back as her home, and the plaintiff sold it back to her, charging only what he had paid for it, in other words, such sum as was sufficient to pay the Morgan mortgage, a valid lien, and pay Elias Day's portion of the debts of the firm of Elias Day & Co. The property then became her property, and she secured the purchase thereof by the notes and mortgage. Elias Day's portion of the debts of the firm

of Elias Day & Co.. was not exactly known, but estimated. The exact amount of the Morgan mortgage was known.   At the same time, the plaintiff and Jane Day entered into an agreement, as to how the payment of her notes was to be applied, by which it is provided that what is paid on the two first notes, or as much thereof as may be necessary, shall be applied on the Morgan mortgage, and what is paid on the other notes for said lands shall be applied to the payment of Elias Day's portion of the debts of Elias Day & Co.; if anything was left, it was to go to Jane Day.   The plaintiff had a valid conveyance for the land, and was under no obligation to convey it back to Jane Day, but was willing to let her have it back as a home, for exactly what it cost him, and the notes and mortgage were given in purchase.   I think, Jane Day had the power and right to enter into these transactions, and that the notes and mortgages are valid instruments, and I so hold.   The plaintiff is, therefore, entitled to foreclose his mortgage, but for what amount?                                    .

"The consideration of the original deed was the payment of the Morgan mortgage and Elias Day's portion of the debts of the firm of Elias Day & Co.   It was deeded back to Jane Day. upon consideration that the Morgan debt be provided for, and the plaintiff secured for what he had paid and agreed to pay of the debts of Elias Day.   It becomes, therefore, necessary to ascertain what Elias Day's portion of these debts were.   The amount of the debts of Elias Day & Co. paid and assumed by the plaintiff, I find was the sum of $1,905.94. Under the terms of the partnership Elias Day's portion of this amount is five-eighths.   In the accounting, Elias Day contended that he has paid of the firm debts the following items: Hagood, Bruce & Co., $56.60; brick, $60; freight and express, $41.50; paints, $9.15; interest, $7.50; expenses of witnesses and attorney to Charlotte, $35; brickyard hands, $45; F. M. Day and others, $100.   These amounts I will allow, and they aggregate the sum of $355.15.   Elias Day's claims for services, and hauling by his own team, I do not allow.   Partners must act in good faith towards each

other.　There was no agreement by the firm that these matters were to be charged.　Both of the members of the firm put in their time and services and teams.　No such charges were contemplated, and I do not think they can be set up as charges in this accounting, and I so hold.　The total indebtedness of the firm of Elias Day & Co., at the time of these transactions, was the sum of $2,261.09.　Under this accounting, the amount the plaintiff is entitled to foreclose his mortgage for is the sum of $1,050.18, with interest from January 1st, 1894, computed annually at eight per cent. per annum, less the payments made by Jane Day, which were not applied to the Morgan mortgage.　This amount calculated up to the first day of November, 1903, is the sum of $1,684, which is the amount due the plaintiff on his mortgage debt, less the difference in the attorney's fees occasioned by his not applying all the payments by Jane Day to him on the Morgan mortgage.　But I do not think the plaintiff can foreclose his mortgage on the fifteen acre tract described in the agreement between himself and Jane Day, dated February 26th, 1895, as in the agreement he agreed to release from his mortgage this tract and to procure the release of the same from the mortgage of the defendant, J. H. Morgan.　This tract will not, therefore, be sold, unless the balance of the land should not bring enough to pay the mortgage of the defendant, James H. Morgan, in which event he may apply for a further order of the Court to sell the same, and in which event the other defendants would be entitled to have deducted from the amount due on the plaintiffs' mortgage debt the value of the fifteen acres to be determined by the further order of the Court.　But this contingency will hardly arise.　The amount due on the mortgage of the defendant, James H. Morgan, calculated up to the first day of November, is the sum of $926, and he is entitled to a foreclosure of his mortgage for that amount."

From this decree the defendant, Elias Day, has appealed on the following fifteen grounds:

"(1) In holding that the conveyance from Jane Day to

this plaintiff was intended as a sale of the lands; whereas, he should have held that said conveyance was intended to secure the payment of her husband's debts, and that said transaction is to be regarded in equity as a mortgage.

"(2) He erred in holding that the consideration of the conveyance by Mrs. Day was the payment of her husband's debts, it being submitted that said conveyance was not a payment of said debts, and was not intended as such, but was intended to secure the payment of his share of the debts of Day & Co.

"(3) He erred in holding that said transaction was valid under the laws then of force, it being submitted that this was substantially a contract, when Mrs. Day undertook to secure her husband's debts by a pledge of her property, and that the same was void.

"(4) He erred in holding that the reconveyance of said land by the plaintiff to Mrs. Day was a sale; whereas, he should have held that the reconveyance was for the purpose of changing the form of security from that of a conveyance in trust in the nature of an equitable mortgage to that of a mortgage to secure the debts of her husband.

"(5) He erred in not holding that said notes and mortgage were a substitute for the prior security.

"(6) He erred in not holding that the mortgage sued on in the complaint was one which had been executed by a married woman to secure the payment of her husband's debts, and was void.

"(7) He erred in not holding that, under the laws of force at the time of said mortgage, a married woman was without power to mortgage or convey her property as security for her husband's debts, and in not holding that the said mortgage was void.

"(8) He erred in holding that the plaintiff was entitled to have the mortgage foreclosed, and in directing the sale of the premises to pay said mortgage.

"(9) He erred in holding that the plaintiff had paid on

the debts of Day & Co. the sum of $1,905.94, when plaintiff testified that he had paid only $1,621.96.

"(10) He erred in disallowing the claim of Elias Day for his own services, to wit: $2 per day for 250 days, and for the use of his team, $950, it being submitted that under the evidence, the firm of Elias Day & Co. was liable for the payment of these matters, and that on an accounting between the plaintiff herein and said Elias Day, he should be allowed credit for the reasonable value of his own services and of his teams.

"(11) He erred in not allowing Elias Day credit for $182.65 paid by him on November 18, 1905, and for $200 paid by him on November 4, 1895, which should have been applied to the Morgan mortgage, but was kept by the plaintiff.

"(12) He erred in not allowing two items of $38.50 paid on the July 9th, 1897, and $96 paid in November, 1898, both credited on the note January 1, 1897.

"(13) It appearing that no accounting had been had between the partners composing the firm of Day & Co., it is submitted that it was error to direct the foreclosure of said mortgage without an accounting and ascertaining how the said partners stood between themselves.

"(14) It is submitted that he erred in holding that the sum of $1,684 was due on the said notes and mortgages held by the plaintiff, it being submitted that on an accounting very much less would be found to be due thereon.

"(15) It is submitted that he erred in not holding that the notes and mortgages sued on, having been executed by a married woman as security for her husband's debts, was void, and in not dismissing the complaint."

We are so well satisfied with the decree of the Circuit Judge, that at one time we had intended to adopt his decree as the opinion and judgment of this Court, but upon reflection have concluded to take the other course and will consider the exceptions in their order.

(1) We agree with the Circuit Judge, that the testimony

of Col. Bowen, the plaintiff, is clear and conclusive that the deed executed by Mrs. Day to him was intended as a sale of the lands. The very agreement itself shows that it was not the intention of the parties that any other course should be adopted. It was not agreed that the land should be reconveyed to Mrs. Day, and furthermore, it must be remembered that Elias Day has received deeds from his wife, now deceased, for the land covered by the mortgage of Col. Bowen. This mortgage and the notes were written and prepared by Elias Day himself. By his testimony, he states that it was under his arrangements with his wife that this plan was adopted. He told Col. Bowen, after his wife's death, that the deeds from his wife to himself were subject to his mortgage. He requested Col. Bowen to agree to this arrangement with his wife. The two infant children of Mrs. Day have no interest in the land now in controversy. It is Elias Day himself who alone is concerned. He produced the two deeds alleged to have been executed by his wife to himself, and he is bound thereby. He is estopped by his conduct in the year 1893, ten years afterwards, after his wife is dead, endeavoring to rip up this transaction. This exception is overruled.

(2) We do not find any error on the part of the Circuit Judge that the conveyance of Mrs. Day was in payment of her husband's debts. It was so intended by all parties, including Elias Day himself. This exception is overruled.

(3) We think the transaction was valid under the laws as then existing in this State (1893) ; certainly the Constitution of 1868 empowered the wife to alienate her property, and the decisions of our Court sustain such alienation. Let this exception be overruled.

(4) A careful investigation of the testimony, and after a scrutiny of the argument on both sides, we are satisfied that the reconveyance of the plaintiff to Mrs. Day was a sale. Col. Bowen, whose testimony bears directly on that point, shows it was a sale. This exception is overruled.

(5) The Circuit Judge did not err in refusing to hold that

the said notes and mortgages were a substitute for a prior security. This exception is overruled.

(6) The Circuit Judge did not err in refusing to hold that the mortgage sued on was executed by a married woman to secure the payment of her husband's debts, and was void. The whole testimony shows that the Circuit Judge was correct in so refusing. Again, we present the view that Elias Day, who now asks this Court to take this view in antagonism to the Judge's decree, is estopped by his conduct from taking advantage of his own wrong. This exception is overruled.

(7) The Circuit Judge did not err that, under the laws of force at the time of said mortgage, Mrs. Day was without power to mortgage or to convey her property; not as security for her husband's debts, but in the payment of such debts, at the instigation of her husband himself. This exception is overruled.

(8) The Circuit Judge did not err in holding that the plaintiff was entitled to have the mortgage foreclosed, and in directing the sale of the premises to pay said mortgage. This conclusion follows necessarily from the foregoing views that we have expressed in disposing of the exceptions from one to seven, inclusive. This exception is overruled.

(9) The Circuit Judge did not err in holding that the plaintiff had paid on the debts of Day & Co. the sum set up. On page 14 of the brief, will be found an itemized statement of what the debts of Day & Co. were at the time the deed was made, amounting to $1,905.94. This amount the plaintiff had paid or had assumed, and was obliged to pay. He has agreed to do it, and Elias Day is insolvent. The providence of the good wife, who is now dead, but who lived for six or seven years after the transaction with Col. Bowen, and who never for one moment criticised Col. Bowen's conduct, has abundantly provided the means whereby Col. Bowen may pay and discharge any debts still unpaid. This exception is overruled.

(10) We agree with the Circuit Judge, that to allow the defendant, Elias Day, to come in, twelve or thirteen years after the work had been completed, and claim an account amounting to $1,454 for his services and those of his teams, would be simply monstrous, for he had never mentioned any such claim to Col. Bowen until the day of reference, while Col. Bowen's services were testified to be worth one-third of the whole amount; but it is useless to multiply words in disposing of such a claim. It will not be allowed to stand for a moment, and the exception is overruled.

(11) and (12) As remarked by the respondent's attorney, this is a misapprehension. Every credit made was allowed in the calculation of the Circuit Judge. The decree found the total indebtedness of Day & Co., $2,261.09, to which there is no exception. Of this amount, Day was liable for five-eighths, which was $1,413.33. Take from this Day's claim allowed, $355.15, and we have the balance he is liable for, $1,058.18, as the Judge found, less the payments made by Jane Day, which were not applied to the note and mortgage. We are satisfied with this showing. Let these exceptions be overruled.

(13) The appellant complains that no accounting between the partners composing the firm of Day & Co. has been had. It seems to us that he ignores the fact that the reference was adjourned and time given to both sides to produce any papers or claims that might have been overlooked in the previous investigation. This being the case, there can be no foundation in justice to this claim on the part of Elias Day. Let this exception be overruled.

(14) We cannot see with what justice, the appellant, Day, complains that an accounting would make the amount due on the notes and mortgage much less than is claimed by the plaintiff. Every opportunity has been afforded the appellant, Elias Day, to make himself fully heard and felt in adjusting the accounts between the parties. Let this exception be overruled.

(15) We think that we have already disposed of this exception by what we have held in considering the others previously disposed of. Let the exception be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and the action remanded to the Circuit Court for the purposes of enforcing the Circuit decree.