498

PHILLIPS et al. v. MISSOURI–KANSAS–
TEXAS RY. CO. et al. (two cases).
Nos. 1694, 1695.

District Court, W. D. Oklahoma.
March 26, 1937.

Short & Pierson, of Oklahoma City, Okl., for plaintiffs.

M. D. Green, of Oklahoma City, Okl., R. H. Hudson, of Bartlesville, Okl., R. B. F. Hummer, of Oklahoma City, Okl., F. E. Kennamer, Jr., of Tulsa, Okl., and Fred M. Carter, of Bartlesville, Okl., for defendants.

VAUGHT, District Judge.

As will be seen from the captions, the plaintiffs and the defendants in the above-entitled suits are the same, respectively. These two actions involve the title to certain real estate situated in Oklahoma City, Oklahoma county, Okl., formerly belonging to the estate of Joseph W. Phillips. It is not necessary to go behind the title of Joseph W. Phillips for the purpose of this opinion.

Joseph W. Phillips died testate on or about the 15th day of April, 1901, and left surviving him his widow, Maud Phillips, and two children, Joseph W. Phillips and Ruth Phillips (now Whitfield); said children being the plaintiffs herein.

Under the will of Joseph W. Phillips, Sr., it is provided:

"I hereby give and bequeath unto my beloved wife, Maud Phillips, one half of the remainder of my entire estate, and the other half of the remainder of my estate, I hereby give and bequeath unto my children.

"I hereby constitute and appoint my said wife, Maud Phillips, the sole executrix of this will, without bond; and I hereby direct, authorize and empower her to convert all my property in Oklahoma Territory, or elsewhere, both real and personal, except the property owned by me in Ardmore, I. T., into money, but in doing so, it is my desire that she consult with my true and loyal friend, Wm. H. Dougherty, of Gainesville, Tex., as to the prices for which said property may be sold; and I further authorize and empower my said wife, Maud Phillips, to invest the proceeds realized from the sale of property in Oklahoma Territory, or elsewhere in real estate and in the purchase of said real estate, it is my desire that she take the advice of said Wm. H. Dougherty.

"It is the purpose and intention of this will to constitute my said wife, Maud Phillips, trustee, for my children in the sale and investment of the half of my estate

hereby bequeathed to my children and that she hold the interest in my estate hereby bequeathed to my children, as trustee until they reach their majority."

There is no contention that there were any other children of the deceased except the two above mentioned.

On September 10, 1902, Maud Phillips, for herself and as executrix of the last will and testament of J. W. Phillips, deceased, and as trustee under said will for the children of J. W. Phillips, made, executed, and delivered, in consideration of the sum of $650, a warranty deed to the Missouri, Kansas & Oklahoma Railroad Company, a corporation, to the following described real estate:

"A strip of ground over and across the following portions of the Southeast Quarter of section Thirty four (34) Township Twelve (12) North of Range Three (3) West I. M.

"1st. That portion of said quarter section commencing at the southwest corner and running thence East 660 feet; thence North of the C. O. & G. R. R. right of way; thence West to the West line of said quarter section; thence south to the place of beginning.

"2nd. That portion of said quarter section commencing a point 1320 feet East of the Southwest corner; running thence 660 feet; thence North to the C. O. & G. R. R. right of way; thence west 660 feet; thence south to the point of beginning.

"3rd. That portion of said quarter section commencing at the intersection of the east line of said quarter section with the north line of the right of way of the C. O. & G. R. R. Co. running thence in a westerly direction along the north line of said C. O. & G. right of way 184 feet; thence in a northeasterly direction to a point on the East line of said quarter section 130 feet north of the place beginning; thence south to the place of beginning.

"For a more definite description of said strip of ground reference is hereby made to the map and stakes showing the location of the right of way of second party over and across the foregoing portions of said quarter section as said right of way is now located."

The granting clause in said deed is as follows:

"To have and to hold the premises hereby conveyed with all the rights, privileges and appurtenances thereunto belonging or in anywise appertaining unto the said Missouri Kansas and Oklahoma Railroad Company, party of the second part, its successors and assigns forever, free, clear, and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and encumbrances of whatsoever nature, and that the said first party for herself, her heirs, executors and administrators hereby covenants to warrant and defend the title to the premises hereby conveyed against the claim of any person or party."

On the 20th day of February, 1903, Maud Phillips, for herself and as executrix of the last will and testament of J. W. Phillips, deceased, and as trustee under said will for the children of J. W. Phillips, made, executed, and delivered unto the Texas & Oklahoma Railroad Company, a corporation, in consideration of the sum of $247.50, a warranty deed to certain described property; the description of which in the deed and the granting clause being as follows:

"All that part of the West 660 feet of the East 1320 feet of the southeast quarter (SE¼) of the Southeast quarter (SE¼) of Section number thirty-four (34), in Township number twelve (12) North of Range three (3) west, Indian Meridian, described as follows: beginning at a point of intersection of the southerly line of right of way of the Missouri, Kansas and Oklahoma Railroad and the East boundary line of said 660 feet tract; thence south along the said east boundary line 234 6/10 feet; thence westerly to said southerly right of way line of said railroad to a point 500 feet southwesterly measured along said right of way line from the point of beginning thence northwesterly along said right of way line 500 feet to the point of beginning, containing 1 1/10 acres, more or less.

"It is understood that the right of way of the Missouri, Kansas & Oklahoma Railroad above referred to, is 50 feet in width on the south side of the censur line of said railroad.

"To have and to hold the premises hereby conveyed with all the rights, privileges and appurtenances thereunto belonging or in anywise appertaining unto the said Texas and Oklahoma Railroad company, part of the second part its successors and assigns, forever free, clear, and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and encumbrances of whatsoever na-

ture; except taxes for year 1903, and the said first party for herself, her heirs, executors and administrators hereby covenants to warrant and defend the title to the premises hereby conveyed against the claim of any person or party."

And on July 1, 1920, Maud Phillips, for herself and as executrix of the last will and testament of Joseph W. Phillips and as trustee for Wilmer Phillips and Ruth Phillips under the will of Joseph W. Phillips, deceased, made, executed, and delivered unto the Missouri, Kansas & Texas Company, a corporation, in consideration of the sum of $1,500, a warranty deed to certain real estate in Oklahoma City, Oklahoma county, Okl.; the description of which and the granting clause being as follows:

"A tract of land in the SE quarter of SE quarter of Section 34 T. 12 N. R. 3 W. —starting at a steel rail marker at SE corner Sec. 34, thence in a northerly direction along the east line of Sec. 34 a distance of 533 feet more or less thence to the left 90 degrees 12 minutes in a westerly direction 660 feet more or less to a point of beginning. Thence continuing in the last named course a distance of 579 feet more or less to a point 50 feet distance measured at right angles from center line of present main tract of MK&T Ry thence to the right 145 degrees 31½ minutes in a northeasterly direction along the present right of way line parallel with and 50 feet distant measured at right angles from the center line of present main tract a distance of 138 feet more or less; thence to the right 2 degrees 50½ minutes a distance of 48 feet thence to the right 27 degrees 50 minutes more or less a distance of 425.3 feet to a steel rail thence to the right 94 degrees no minutes a distance of 130 feet more or less to a point of beginning containing 1.31 acres more or less, together with all improvements thereon and the appurtenances thereunto belonging and warrant the title to the same.

"To have and to hold said described premises unto the said party of the second part, its heirs and assigns forever, free, clear, and discharged of and from all former grants, charges, taxes, and judgments, mortgages and other liens and encumbrances of whatsoever nature."

On April 2, 1903, the Texas & Oklahoma Railroad Company conveyed certain of the above-described real estate designated in the bill as tract No. 2 and containing 1.1 acres to the Missouri, Kansas & Oklahoma Railroad Company, and on June 30, 1904, the Missouri, Kansas & Oklahoma Railroad Company conveyed by warranty deed certain of the above-described real estate to the Missouri, Kansas & Texas Railway Company, and by a subsequent deed conveyed other portions of said real estate to the Missouri, Kansas & Texas Railway Company.

On July ——, 1920, and on October 6, 1930, respectively, Ruth Phillips Whitfield and Bryan V. Whitfield, wife and husband, Joseph Wilmer Phillips and Virginia Lee Phillips, husband and wife, executed quitclaim deeds to the Missouri, Kansas & Texas Railway Company, and to the Missouri-Kansas-Texas Railroad Company, to all of the real estate described and set out in the bills.

By proper conveyances, the title to the real estate described in the bills was conveyed unto the Missouri-Kansas-Texas Railroad Company, which became and is now the record owner of the said real estate.

On the 8th day of May, 1930, the Missouri-Kansas-Texas Railroad Company executed an oil and gas lease to the Indian Territory Illuminating Oil Company and Phillips Petroleum Company, covering properties owned by said railroad company including the lands described in the bills and the same are now being developed for oil and gas.

In brief, the lands described in the bills were owned by Joseph W. Phillips, and by will said property was conveyed to the widow of the said Joseph W. Phillips, one-half in her own right and the remaining one-half to her as trustee, with power and instructions to sell said real estate, invest the proceeds, and hold same until the children, the plaintiffs herein, reached their majority. The total debts of the J. W. Phillips estate were $150 or less and would not be an impediment to the conveyance of this property, as provided in the will, as there were sufficient funds in said estate to meet said debts.

These lands were conveyed to the defendant railroad companies by warranty deeds from Maud Phillips, the surviving widow of J. W. Phillips as to her one-half interest and by Maud Phillips as trustee under the will to the remaining one-half interest, being the portion willed to the two children.

The plaintiffs, in their bill in each case, challenged the validity of the conveyance from Maud Phillips as trustee for the children to their one-half interest, in the lands described, and contend that the deeds of conveyance amounted to a conveyance merely of an easement for railroad right of way.

They further contend that the quitclaim deeds, at the time they were procured, were procured through fraud and misrepresentations; that the representatives of the railroad companies represented that the quitclaim deeds were desired on behalf of the railroad companies solely for the purpose of curing certain "technical defects" in the title; and that said representations constituted fraud, the defendant railroad companies well knowing that without said quitclaim deeds they would not have good title to said real estate, when they had actually, or were about to enter into a lease contract with the defendant oil companies for the development of said lands for oil and gas purposes.

There are four propositions to be considered.

■ First. Did Maud Phillips, as trustee for the children, have the right and power to convey real estate, willed to said children, to the railroad companies without the approval of the probate court?

Section 11829, O.S.1931 (60 Okl.St. Ann. § 144), provides as follows: "Except as hereinafter otherwise provided, every express trust in real property, valid as such, in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust."

This section of the statutes was construed in Hill v. Hill, 49 Okl. 424, 152 P. 1122, 1125, in which the court, after quoting the above section, said: "We think the correct rule to be that in case of a valid active trust, as in the case at bar, the trust features of the will are a main provision, and must be respected, and that the beneficiaries cannot lawfully take possession of the property in violation of the express provisions of the will providing that they shall take it at some future date." In that case the beneficiaries and the trustee sought, soon after the death of the testator, to make the division of the property immediately, regardless of the provisions of the trust. The court held that this could not be done.

In Parks et al. v. Lefeber, 162 Okl. 265, 20 P.(2d) 179, 182, 86 A.L.R. 392, the court held that a testamentary trust with power of sale gave the trustee the power to sell the property for the purposes stated. In the body of the opinion, the court said: "She was given authority to sell and make deeds of conveyance to any part or parts of the property, 'for the purpose of maintaining herself and our children and for the purpose of reinvestment,' so long as she remained a widow; she to be the exclusive judge of the necessity to sell and of the kind of investment to be made. The language of the will requires us to hold, and we do hold, that Laura Parks was authorized, as trustee, to convey the property." The court further said:

"We will not determine the contention that Laura Parks had no right to convey the property as executrix without the approval of the county court. The conveyance was by Laura Parks, individually, as trustee, and as executrix. Since she had the power to convey it as trustee, it is immaterial whether or not she had the power to convey it as executrix. * * *

"We hold that a devisee under the provisions of a will may convey the real estate devised while the probate proceeding is pending and prior to the entry of the decree of distribution, subject to the payment of the indebtedness against the estate, the costs of administration, and such other orders as the county court is authorized to make under its probate jurisdiction; the purchaser thereof buying at his own risk subject to administration."

In re Vance, 102 Okl. 129, 227 P. 881, the court held: "The title to the property in an express trust is in the trustee, and such trustee in the administration of such trust is subject to the control and supervision of a court of equity, and not of the probate court."

See 69 C.J. p. 760, § 1863.

The court, therefore, is of the opinion that under the express terms of the will, Maud Phillips, as trustee, had full power to convey the properties to the railroad companies without the approval of the probate court.

■ Second. Was the land, so conveyed to the railroad companies, conveyed as right of way or as an easement, or did the

502

deeds convey certain described real property without any limitations?

This question has had considerable attention by the courts of this state and the federal courts of this circuit.

The description of the land in each of these deeds from Maud Phillips to the railroad companies was by metes and bounds, and the only reference to its use as right of way for the railroad companies was for the purposes of comparing the descriptions of the land. In none of said deeds is there language which can be construed as conveying a mere easement or right of way. It is immaterial that the railroad companies were purchasing these lands for right of way purposes. If they purchased the land outright, under a warranty deed conveying absolute title, they would have the right to use it for right of way or for other purposes.

The Supreme Court of Oklahoma, in Marland v. Gillespie, 168 Okl. 376, 33 P. (2d) 207, held: "A deed from a grantor to a railway company containing the sentence, 'The same being for a right-of-way for a railroad track as the survey thereof is now located and said grantee agrees to construct two grade crossings over its track for the use of grantor, and proper water ways under its track where there is heavy fills,' but not otherwise limited, conveys a fee-simple title; such sentence not being a limitation upon the quality of the estate conveyed." The court, in that case, analyzes the case of Santa Fe, L. & E. R. Co. v. Laurie, 67 Okl. 75, 168 P. 1022, which evidently relies upon certain Kansas cases, and distinguishes the Laurie Case and the Gillespie Case, and in distinguishing the Kansas statutes from the Oklahoma statutes, says: "We therefore find in the Kansas statutes a limitation not found in the Oklahoma statutes, which must control the estate acquired in Kansas in any event, regardless of the language of the conveyance or the proven intent of the parties. These cases cannot be authority in Oklahoma."

In Gilbert et al. v. Missouri, K. & T. Ry. Co. et al., 185 F. 102, the Eighth Circuit Court of Appeals, in a very similar case to the case at bar, held, quoting from the syllabus: "Under Wilson's Rev. & Ann.St.Okl.1903, § 907 [16, Okl.St.Ann. § 29] which provides that every estate in land conveyed shall be deemed an estate in fee simple unless limited by express words, and section 1022 [66 Okl.St.Ann. § 7]

which confers on railroad corporations power to take a fee title to land purchased for right of way or other railroad purposes, a conveyance of land to a railroad company by a deed of general warranty vests it with an estate in fee, although the conveyance was for railroad purposes only."

In Knoell et al. v. Frisco Lease, Inc., et al., 78 F.(2d) 286, the Tenth Circuit Court of Appeals held, quoting from the syllabus:

"Under law of Oklahoma, railroad corporation may acquire an estate in fee simple in lands, by voluntary conveyance, since constitutional or statutory limitations apply to quantity of land which railroad corporations may own and not to quality of estate they may acquire.

"Deed conveying lands to railroad corporation without exception or reservation and with no words indicating that land was conveyed for right of way purposes only held to have conveyed fee-simple titles to grantee.

"Where no question of federal law is involved, Circuit Court of Appeals is bound by decisions of Supreme Court of Oklahoma construing constitutional and statutory provisions of that state."

It is clear, therefore, that nothing in the deeds, referred to in the plaintiffs' bills, constitute a limitation of any character, and that the title conveyed is a fee-simple title.

Third and Fourth. Was there fraud on the part of the railroad companies in procuring the quitclaim deeds from the plaintiffs? Are the plaintiffs estopped by their own laches, or by the statute of limitations, from bringing these actions?

It is the contention of the plaintiffs that, at the time the quitclaim deeds were executed, the defendants had knowledge that this land was valuable for oil purposes, which fact was withheld from the plaintiffs, and had plaintiffs known that said lands had value as oil and gas producing lands, they would not have executed the quitclaim deeds. They further contend that the representations that the defendant railroad companies desired quitclaim deeds to cure certain technical defects had the tendency to disillusion the plaintiffs and induce them to execute the quitclaim deeds when they would not have otherwise done so.

It is nothing unusual for oil companies, purchasing lands to be developed for oil and gas purposes which necessitates the outlay of enormous sums of money, to take every possible precaution to see that a perfect title is secured, and it is not unusual that one, who has a perfectly valid title, is required to furnish quitclaim deeds from those hitherto having an interest in the property for the purpose of curing certain "technical defects" when, as a matter of law, the quitclaim deeds are unnecessary.

In this case, the court is of the opinion that the deeds executed by Maud Phillips were valid deeds, and, second, that the deeds conveyed an absolute title to the railroad companies, and that no interest remained to the plaintiffs herein. But assuming that there might have been some remaining interest vested in the plaintiffs, there are no allegations in this petition which rise to the dignity of a basis for fraud. The plaintiffs had the same opportunity to learn whether or not the property was valuable for oil property as did the defendants, and the representations that the defendants made, that they desired the deeds to cure certain "technical defects," fall far short of constituting a basis for fraud.

Sections 9417 and 9418, O.S.1931 (15 Okl.St.Ann. §§ 58, 59), are the sections of the Oklahoma Statutes defining actual and constructive fraud, respectively, and are as follows:

"9417. Actual Fraud Defined.

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

"First. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

"Second. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true.

"Third. The suppression of that which is true, by one having knowledge or belief of the fact.

"Fourth. A promise made without any intention of performing it; or,

"Fifth. Any other act fitted to deceive."

"9418. Constructive Fraud Defined.

"Constructive fraud consists:

"First. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

"Second. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

Two of the tracts involved consisted of slightly more than one acre each, and the third a less amount. One of the quitclaim deeds was executed on the 6th day of October, 1930, while the other was executed on July ——, 1920.

In Nickel et al. v. Janda et al., 115 Okl. 207, 242 P. 264, the Supreme Court held, quoting from the syllabus: "Deeds are solemn instruments, and it is right to suppose that what is stated in a deed represents the true state of things; and equity, justice, and good conscience require no more than that a party to such instrument should be precluded from contradicting it to the prejudice of another person, when that other, or a person claiming through or under him, has been induced to alter his position on the faith of the instrument."

However, this action was filed on the 28th day of December, 1934.

Section 1311, O.S.1931 (58 Okl.St.Ann. § 493), provides: "No action for the recovery of any estate sold by an executor or administrator, under the provisions of this article can be maintained by any heir or other person claiming under decedent, unless it be commenced within three years next after the sale. An action to set aside the sale may be instituted and maintained at any time within three years from the discovery of the fraud or other grounds upon which the action is based."

In Arbor v. Blue et al. (C.C.A.10th) 45 F.(2d) 746, the court held, quoting from the syllabus: "Laches alone would be fatal to claims of persons suing to recover lands after defendant had been in possession more than fifteen years."

In Washington et al. v. Morton, 90 Okl. 142, 216 P. 457, the Supreme Court of Oklahoma held: "Actions for fraud to set aside conveyances must be promptly brought upon discovery of the fraud, unless the parties are laboring under some legal disability which would prevent the bringing of the action." And in the body of the opinion, the court said: "In the case

at bar, Aggie Washington admits in her pleading that for a year she had known the defendant in error was claiming title to the land. She was under no disability that would prevent her from bringing suit immediately upon this discovery; but she took no action, and, as to why she did not, there is no explanation."

In Nickel et al. v. Janda et al., supra, the Oklahoma Supreme Court held: "In equity, a complainant must have been diligent in seeking his remedy, and must not have slept upon his rights; and if, with knowledge of the facts which give him a right to seek rescission, he has been guilty of an unreasonable and unnecessary delay in availing himself of his remedy, a court of equity will deny him relief."

It may be contended that courts of equity, under modern economic conditions, should extend the rule as defined by statutes and interpreted by courts, but the discovery of oil alone has nowhere been held to be sufficient to justify setting aside a valid conveyance of real estate, and the court is of the opinion that that is the only basis which could be urged under the complaints of the plaintiffs.

The motion to dismiss is sustained in each case. An exception is allowed. Counsel for the defendants may submit a form of decree consistent with this opinion.