## BLACK v. DONELSON.

No. 9778—Opinion Filed July 13, 1920.

Rehearing Denied Nov. 16, 1920.

(Syllabus by the Court.)

**1. Jury—Right Jury Trial—Action to Cancel Oil Lease.**

In an action seeking the cancellation of an interest in an oil and gas lease, and to recover the consideration paid for the interest assigned, alleging fraud on the part of the assignor, where the answer only goes to a denial of the fraud alleged in the petition and no denial as to the consideration, the action would be termed one of an equitable nature, and neither party would be entitled, as a matter of right, to a trial by jury.

**2. Parties—Necessary Parties Plaintiff.**

A defendant's right is to have a cause of action prosecuted against him by the real party in interest, but his concern ends when a judgment for or against the nominal plaintiff would protect him from any action upon the same demand by another, and when, as against the nominal plaintiff, he may assert all defenses and counterclaims available to him were the claim prosecuted by the real owner.

**3. Trial—Exclusion of Evidence—Cure of Error.**

Where the court commits error in excluding evidence upon direct examination of a witness, the error is cured when the evidence excluded is brought out on the cross-examination of the witness.

**4. Appeal and Error—Review of Evidence—Equity Cases.**

In an equity proceeding the Supreme Court will weigh the evidence, but the judgment of the trial court will not be set aside where it is not clearly against the weight of the evidence.

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by N. F. Donelson against E. R. Black to rescind assignment of oil lease and to recover purchase price. Judgment for plaintiff, and defendant brings error. Affirmed.

Kathryn Van Leuven and C. B. McCrory, for plaintiff in error.

W. W. Wood and W. W. Witten, for defendant in error.

PITCHFORD, J. The defendant in error, plaintiff below, instituted this action against plaintiff in error, defendant below, for the purpose of rescinding an assignment of an interest in an oil and gas lease, and to recover the sum of $1,250, the amount paid for the interest so assigned. The parties will hereafter be designated as they appeared in the lower court.

The following facts are deducible from the evidence:

The defendant was the owner of an oil and gas mining lease on the northeast quarter of the southwest quarter of section 24, township 14 north, range 14 east. The plaintiff began negotiations with the defendant looking towards securing an interest in the lease. The defendant exhibited to the plaintiff a map, and designated the 40 acres as shown by the map to the plaintiff. Before the negotiations were closed, plaintiff and defendant went out to the vicinity of the property and defendant there pointed out to the plaintiff 40 acres, claiming the same to be the 40 acres covered by the lease, but instead of pointing out the 40 acres upon which the defendant had a lease, the 40 adjoining it on the north was pointed out, being the southeast quarter of the northwest quarter of the same section.

Immediately to the west of the property designated by the defendant and pointed out to the plaintiff there was a producing well. After viewing the premises, the plaintiff purchased a 9/16 interest in the lease owned by the defendant, and designated a spot on the 40 pointed out by the defendant where a well should be drilled. The purchase money, together with the assignment of the interest in the lease, was placed in escrow in the Bank of Commerce of Okmulgee, pending the drilling of a test well by the defendant to and through the Booch sand, unless oil or gas was found in paying quantities at a lesser depth, and upon satisfactory proof of the completion of the well, the said Bank of Commerce was authorized and directed to deliver to the defendant the said sum of $1,250, and to deliver to the plaintiff the assignment of the lease. Immediately after closing the deal, the plaintiff returned to his home in Ft. Smith, Ark. Sometime thereafter, he was notified by the defendant that the drilling had about reached the Booch sand and was requested to come to Okmulgee. After reaching Okmulgee, plaintiff, in company with the defendant, went out to inspect the well, and then for, the first time discovered that the same was being drilled, not on the 40 acres pointed out to him, but was being drilled on the 40 south of that, and then and there expressed his dissatisfaction. It is also shown that there were three other parties interested with him in the interest assigned; that the lease was made in his name with their consent; that when he discovered that the well was not being drilled upon the land pointed out to him, he complained to the defendant and informed him that he had drilled the well in the wrong place and not on the ground the defendant had pointed out to him. On the following day, which was Sunday, the plaintiff returned to Ft. Smith. Early Monday morning, there was a meeting of the plaintiff with the other parties interested in the interest assigned. At that time plaintiff reported the fact of the well being drilled on land different from that pointed out to him by the defendant, and plaintiff then telegraphed the bank not to deliver the money left in escrow. Plaintiff further testified that he did not know until about the middle of the week that the well proved to be a dry hole.

The evidence on the part of the defendant is to the effect that he pointed out to plaintiff the correct 40, and that when he and the plaintiff went out to see the well, the plaintiff seemed to be perfectly satisfied; that at the time the drilling had almost reached the Booch sand and plaintiff seemed to be enthused over the prospect of getting oil. The defendant further testified that when they went out to look at the well, the plaintiff said:

" 'Black, this well is not drilled where I thought you were going to drill it.' I says: 'This is the first time I have been out here, and I left it solely to Mr. Fair. He had as much interest in it as we had.' And he said, 'Probably it would be better where it is.' And we went up to the rig, and Mr. Fair was there, and I asked him how far it was to the sand, and he said he thought he was on it then, and he drilled a little further and it showed some sand and a smell of oil."

Defendant further testified that before they left the well they had all made up their minds that the well had been drilled through the sand and that it was a dry hole. He further testified that Mr. Donelson said he thought it was a dry hole.

After hearing all the evidence in the case, the court found the issues in favor of the plaintiff and decreed that the assignment of the interest in the lease be canceled and that plaintiff recover of the defendant the sum of $1,086.37. Defendant appeals.

The grounds relied upon for reversal can be summarized under the following heads: First, that error was committed in overruling the defendant's demand for a jury; second, that the court erred in excluding certain evidence; and, third, that the decree of the

court was contrary to the evidence. The defendant contends that under section 4991, Rev. Laws 1910, an issue of fact arose from the pleadings, and that therefore he was entitled to a trial by jury under section 4993, Rev. Laws 1910.

In considering defendant's first ground of error, it is necessary to notice the nature of the action instituted by the plaintiff. If the action had been for the recovery alone of the consideration paid for the interest in the lease, then there would be some merit in this contention. It was necessary for the plaintiff, as a condition precedent to entitle him to a judgment for the consideration paid, to establish the allegations of his petition, entitling him to the cancellation of the lease. The prayer for a money judgment could not be considered until the main contention of plaintiff, that the defendant had imposed upon him in pointing out to him different land from that described in the lease and that plaintiff had been deceived, had been established. The offset well was on the southwest of the northwest. The land which was shown to the plaintiff by the defendant was the southeast of the northwest. The land described in the lease was the northeast of the southwest. The plaintiff testified that he would not have paid this consideration for the interest in the lease; in fact, would not have bought at all, had he not been misled and deceived by the defendant in showing him the wrong land. If the plaintiff failed to establish this fact to the satisfaction of the court, and the court had found that the plaintiff was not misled, was not deceived, and should have upheld the lease, then the plaintiff would not have been entitled to recover judgment against the defendant for the consideration. That portion of the prayer for the recovery of the consideration was purely incidental.

This case is in many respects similar to an action brought to foreclose a mortgage. If the answer fails to deny the indebtedness, but only goes to the extent of attacking the mortgage, then and in that event the action would be of an equitable nature, and the facts would be for the court to decide and neither party would be entitled to a jury.

In Holmes et al. v. Halstid et al., 76 Okla. 31, 183 Pac. 969, the court said:

"Plaintiffs' action was one 'for the recovery of money' within the meaning of section 4993, Rev. Laws. It was their contention that the Halstids were indebted to them in the sum evidenced by their notes. This was denied by the Halstids, who in effect set up a failure of consideration for the notes, which, if established, entitled them to a verdict. The primary issue was whether, notwithstanding the execution of the notes, defendants were indebted to plaintiffs in any amount. Such being the nature of plaintiffs' action, and of the issues joined, the defendants were entitled to a jury trial as a matter of right."

In Morgan v. Field, 35 Kan. 162, the court said:

"In his petition, Lyman Field set forth a promissory note and asked for a recovery of the amount due thereon, as well as the foreclosure of the mortgage executed to secure the same. If issue had been joined upon the demand for money, a jury trial should have been awarded as was decided in Clemenson v. Chandler, 4 Kan. 558, but no issue of fact was joined upon that question. The administrator of the estate of Dennis Morgan, deceased, made default. And the plaintiff in error did not deny the execution of the promissory note, nor question the right of the defendant in error to recover the amount claimed by him. The pleadings, therefore, admitted the allegations respecting the promissory note and the right of defendant in error to recover judgment in the amount claimed, and left nothing to be tried except his right to have the mortgage foreclosed, and the lands sold in satisfaction of his claim. The issues joined between the defendant in error and P. J. Morgan were, therefore, purely equitable in their character, upon which a jury trial cannot be demanded as a matter of right."

In Mesenburg v. Dunn, 125 Cal. 222, 57 Pac. 887, cited with approval in Hogan v. Leeper, 37 Okla. 655, 133 Pac. 190, the syllabus is as follows:

"In an action to annul contracts to purchase land entered into by plaintiff and to recover money paid to defendant thereunder, on the ground that such contract was procured by fraud, when the answer denies merely the fraud and not the amount paid, the defendant is not entitled to a jury trial."

We are of the opinion that defendant was not, as a matter of right, entitled to a trial by jury.

The defendant next complains of the error of the court in refusing and excluding certain evidence seeking to show that, after the transaction between plaintiff and defendant, plaintiff engaged defendant to get some other leases for him on similar terms. Objection to this evidence was made and sustained. We are not prepared to say that the court was not in error in rejecting this evidence. Had the cause been tried to a jury, we are enabled to see where, probably, the evidence would be material. The plaintiff is complaining of the bad faith on the part of the defendant; that is, that the defendant induced the plaintiff to act by pointing out to him land entirely different from that mentioned in the lease. It is rather peculiar that the plaintiff would still be trusting the defendant and

relying upon his honesty and integrity if he believed that the defendant had theretofore imposed upon him. However, in the cross-examination of the defendant, the same evidence was brought out which was attempted to be elicited in the direct examination. On cross-examination, the defendant, testifying to the conversation between himself and the plaintiff on their return from the well, testified as follows: "He said, coming in, that he was satisfied it was a dry hole and wanted me to try to get another 80 for him." Where error is committed in the exclusion of evidence on direct examination of the witness, the error is cured when the same evidence is elicited from the witness on cross-examination.

The next contention of defendant is that, this action having been construed by the trial court to be of an equitable nature, it was then necessary that all parties at interest should be joined either as plaintiff or defendant, and he cites section 4692, Rev. Laws 1910, which provides:

"Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in the petition."

The assignment of the interest of the lease in question, however, was made in the name of the plaintiff. It is in evidence that the assignment was made in this form by and with the consent of the other parties who were interested in the same with the plaintiff. We are of the opinion that the section cited by the defendant is not applicable.

Section 4683, Rev. Laws 1910, provides:

"An executor, administrator, guardian, trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such name as is authorized by law, and official bonds may be sued upon in the same way."

The purpose of the statute in requiring that the real parties in interest shall be made parties is in order that the decree rendered shall conclude all parties. In the instant case, the plaintiff being authorized to act for his associates, and being permitted to have the contract made in his name, any judgment in the action would conclude them as completely as it would conclude the plaintiff. They could not be heard to complain because they were not served with notice of the action.

In Words and Phrases (Second Series) vol. 4, page 132, a "real party in interest" is defined as follows:

"The test of whether one is the real party in suit is, Does he satisfy the call for the person who has the right to control and receive the fruits of the litigation? The rule is stated in a recent ably written work thus: 'The real party in interest, within the meaning of the provision of the Code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter as distinguished from one who has only a nominal, formal, or technical interest in or connection with it.'"

In 31 Cyc., page 161, it is said:

"An agent may maintain an action in his own name on a contract in which his principal is interested: (1) Where the contract is made in writing expressly with the agent and imports to be a contract personally with him, although he may be known to act as an agent. (2) Where he is the only known or ostensible principal, and therefore is, in contemplation of the law, the real contracting party." Ward v. Ryba, 58 Kan. 741; Neal v. Andrews (Tex. Civ. App. 1900) 60 S. W. 459; Kelly v. Thuey, 102 Mo. 522.

As was said in Philbrook v. Superior Court, 111 Cal. 31, 43 Pac. 402:

"A defendant's right is to have a cause of action prosecuted against him by the real party in interest. But, as has been elsewhere pointed out (Ginselman v. Starr, 106 Cal. 651, 40 Pac. 8), his concern ends when a judgment for or against the nominal plaintiff would protect him from any action upon the same demand by another, or when, as against the nominal plaintiff, he may assert all defenses and counterclaims available to him were the claim prosecuted by the real owner."

The serious question before the court below was whether or not the plaintiff announced his intention to rescind the contract in sufficient time. Did he, before leaving Okmulgee, after his visit to the well, ascertain that the well was a failure? If the trial court had found that the plaintiff did not announce his intention of rescinding the contract prior to his leaving Okmulgee, and knowing at that time that the well was a positive failure, in all probability the trial judge would have found that the plaintiff was bound by the contract, and that the plaintiff, after ascertaining that he had been deceived as to the location of the well and waiting until he ascertained whether the well was to be a failure or a producing well, after it turned out to be a dry hole, was not entitled, in a court of equity, to the relief prayed for. But, if the trial court found that he rescinded before the well was ascertained to be a failure, then he would be entitled to relief.

provided the court should have found that he had been deceived.

In Pierce Oil Corporation v. Schacht et al., 75 Okla. 101, 181 Pac. 731, McNeill, J., speaking for the court, said:

"A suit in equity is an appeal for relief to the moral sense of the chancellor. A court of equity is the forum of conscience. Nothing but good faith, the obligations of duty, and reasonable diligence will move it to action. Its decree is the exercise of discretion; not of an arbitrary and fickle will, but of a wise; judicial discretion, controlled and guided by the established rules and principles of equity jurisprudence."

The trial court having found the issues in favor of the plaintiff and having decreed the cancellation of the lease, we are bound by that judgment unless, from an examination of the record, we find that the judgment of the trial court was clearly against the weight of the evidence. We have examined the evidence carefully and are not prepared to say that the decree is against the clear weight of the evidence. On the other hand, had the trial court found against the plaintiff, the judgment would not be disturbed by this court. The evidence was conflicting. The trial court had the witnesses before him, and was better prepared to pass upon the force of the evidence than this court is. We cannot say that the judgment is against the clear weight of the evidence.

We, therefore, conclude that the judgment of the trial court should be affirmed, and it is so ordered.

RAINEY, C. J., HARRISON, V. C. J., and JOHNSON and McNEILL, J., concur.