## WASHINGTON et al. v. MORTON.

No. 11065—Opinion Filed June 12, 1923.

Rehearing Denied July 3, 1923.

(Syllabus.)

**1. Appeal and Error—Review of Equity Case—Sufficiency of Evidence.**

In equity cases the court will review all the evidence and, unless it clearly preponderates against the judgment of the trial court, the same will be affirmed.

**2. Deeds—Fraud—Presumptions and Proof.**

In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel to opposing presumptions.

**3. Trusts—Interest in Land—Quieting Title —Right of Action in Trustee.**

Where A. purchases a tract of land for himself and B., and takes title in B., B. holds the title in trust for A. to the extent of his interest, and may prosecute an action to quiet title to the land in his own name.

**4. Deeds—Cancellation for Fraud—Laches.**

Actions for fraud to set aside conveyances must be promptly brought upon discovery of

the fraud, unless the parties are laboring under some legal disability which would prevent the bringing of the action.

### 5. Same—Fraud — Fiduciary Relations—Pleading.

In actions for fraud growing out of fiduciary relations, the existence of the fiduciary relations must be alleged.

### 6. Deeds—Cancellation—Inadequacy of Consideration — Nonpayment of Purchase Price.

Inadequacy of consideration is not sufficient to justify a court of equity in setting aside a deed regularly executed, much less a failure to pay the purchase price. In the former case, the vendor must bear the loss, as the court cannot contract for the parties; while in the latter case, he may sue and recover it.

### 7. Quieting Title—Judgment—Evidence.

Record examined, and held, that the weight of the evidence fairly preponderates in favor of the judgment of the trial court.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Walter W. Morton against Aggie Washington, Charles Johnson, and John D. Wakeley to quiet title. From a judgment in favor of plaintiff, defendants bring error. Affirmed.

Caruthers & Irwin, for plaintiffs in error.

W. W. Wood, for defendant in error.

MASON, J. This action was brought by defendant in error, plaintiff below, on the 15th day of May, 1917, in the district court of Okmulgee county, against plaintiffs in error, defendants below, to quiet title to the following described tracts of land:

"The west half (W½) of the northwest quarter (N. W. ¼) of section twenty-one (21), and east half (E. ½) of northeast quarter (N. E. ¼) of section twenty (20), all in township fourteen (14) north, range twelve (12) east; and the northwest quarter (N. W. ¼) of the northeast quarter (N. E. ¼) and the northeast quarter (N. E. ¼) of the northwest quarter (N. W. ¼) of section thirty (30), township fourteen (14) north, range eleven (11) east, in Okmulgee county, state of Oklahoma."

Defendant in error alleges, in substance, in his petition that he is the owner of the land, is in possession of the same; that he purchased it from W. A. Jolly, and that W. A. Jolly purchased it from Dixon Washington and Aggie Washington, husband and wife, who inherited it in equal parts from their two deceased minor children, and that plaintiffs in error are asserting claim to the land

which is a cloud upon his title, and praying that title be quieted in him as against these claims.

Plaintiff in error Aggie Washington filed a separate answer and cross-petition, denying knowingly having executed the deed to Jolly or a petition to the county court of Okmulgee county for approval of deed from Dixon Washington, her husband, to Jolly, or that she was ever paid anything for her interest in the property. She avers that the only transaction she ever had with reference to the land was under the following circumstances: That in October, 1910, her husband, Dixon Washington, was in jail in the town of Okmulgee, charged with forgery; that plaintiff sent for her to come to Okmulgee, and that when she came she was asked by plaintiff and his agents to sign an instrument to indemnify Jolly against loss by reason of his becoming bondsman for her husband. She further avers that she was so mentally and physically infirm at the time by reason of pregnancy that she was incapable of understanding the nature of the transaction, and that she had no conception or understanding of the papers she signed, but was told by plaintiff and his agents that it was for the purpose of enabling her husband to mortgage his interest in the land to indemnify his bondsmen, and that the deed was a mortgage of her husband's interest for this purpose, and for the purpose of procuring money with which to pay his attorney's fee, and that she received nothing for her interest in the land at any time or in any way.

She further avers that she knew nothing of plaintiff's claim to the title and possession of the land until within the last twelve months, and was preparing to bring suit when this action was brought; that she relied on what her husband, plaintiff, and his agents told her—that the instrument was only to enable her husband to make bond; that this was false and, without reading or knowing the contents of the paper, she signed it, and that the land is of the value of $8,000.

The other plaintiffs in error claim under subsequent conveyance from Aggie Washington, and it will not be necessary to consider them further, as they must stand or fall by the strength of her title.

The evidence is conflicting and irreconcilable, and, unless it clearly preponderates against the judgment of the trial court, the same must be affirmed, the action having been treated by all parties as an action of equitable cognizance.

Dixon Washington and Aggie Washington are citizens of the Creek Nation and are enrolled as members of that tribe of Indians. They were husband and wife, Dixon being a full-blood, and Aggie of three-eighths, and, in the year of 1907, under the Arkansas statute of descent and distribution, which was in force at that time, they inherited the land in question, jointly, in equal interests from their two deceased minor children.

On the 21st day of October, 1910, they conveyed the land by warranty deed to W. A. Jolly in consideration of the sum of $2,000, and on the 5th day of July, 1911, W. A. Jolly, by quitclaim deed, conveyed it to defendant in error. At the time this action was brought, Dixon Washington was dead, he having died in January, 1917, and as to his one-half interest in the land there is no controversy.

The gravamen of the defense of Aggie Washington, and of the affirmative relief sought in her cross-petition, is the fraudulent character of the transaction and her want of understanding of the nature and character of the instrument she executed, it being represented to her by defendant in error's agents that its purpose was to secure bondsmen and attorney's fee for her husband, Dixon Washington, who had been informed against for forgery, and was only as to his interest in the land, when, in fact, it was a deed conveying her interest as well as that of her husband's.

Her testimony, briefly, is that her husband was in jail, and that Joe Grayson came for her and brought her from her home in Beggs, Okla., to Mr. Holbrook's office in Okmulgee, who was attorney for her husband on the criminal charge, and who told her that Dixon had been in jail quite a while, and said he (deceased) had some land to put up for bond if she would sign so he could get out and look around for money for his lawyer's fee; that she was sick at the time of pregnancy; that a child was born to her about a week later; that she did not read the instrument and had no knowledge that she was signing a deed to her interest in the land, and received no part of the consideration; that she never was in Holbrooks' office but the one time, and did not come back to Okmulgee for about seven years; that no one was present when she signed the deed but Joe Grayson and C. W. Holbrook, and that she did not sign a petition to the county court for an approval of the deed of her husband. No witness corroborates her testimony, but, on the other hand, she is strongly contradicted as to every material fact.

The opposing testimony is to the effect that Joe Grayson brought Aggie Washington to the office of C. W. Holbrook on October 15, 1910; that Dixon Washington was released from jail on that day and was not in jail again; that, on the same day, in Holbrook's office, Aggie and Dixon talked over with Holbrook the matter of his fee for defending Dixon, and the matter of bond and said that they would sell the land if Holbrook could find a purchaser; that in pursuance of this arrangement they sold the land to W. A. Jolly and executed a deed to him in Holbrook's office on October 21, 1910; that no one was present but Aggie and Dixon Washington, C. W. Holbrook, and Nellie Cox, now Mrs. O'Farrell, who was a stenographer in Holbrook's office; that the instrument was explained to Aggie as a deed to Jolly for the lands allotted to her two deceased children; that she acknowledged same before R. D. Carpenter, notary public, and signed and swore to a petition before him in the county court for approval of the deed on the part of her husband, who was a full-blood.

While there are circumstances surrounding this transaction that do not appeal to a court of equity, and however unfortunate it might have been for Aggie Washington, yet she was of average intelligence, could read and write, knew her rights in the property and was under no such mental or physical affliction or debility as would impair her capacity to contract. She paid no further attention to the land, made no inquiry about it, paid no taxes, and took no steps to assert her rights until nearly seven years after the transaction, when she filed her answer and cross-petition in this case, except in February, 1917, after her husband's death, she conveyed a part of the land to her coplaintiffs in error.

She admits in her pleading that she had known, for a period of about one year, that defendant in error was asserting claim to the land, and still she took no action, and it is not an unreasonable supposition that she would not have done so if this action to quiet title had not been brought against her.

Defendant in error went into possession of the property, improved it, paid taxes, asserted ownership to it, and exercised dominion over it. It is almost inconceivable that she would have continued to act as a perfect stranger toward this land for so long a period had she not understood that she had conveyed her interest away. The consideration for the property was fair, though no part of it was paid to her, and the fact, alone, that payment was made to her hus-

band, and largely for the purpose of satisfying his obligation, would not be cause for canceling the deed. The payments continued for more than one year, and she must have known that her husband was receiving the money, yet she made no objection, made no demand that the consideration or any part thereof be paid to her, and she cannot now claim after a lapse of nearly seven years that the conveyance was without consideration. Thomas v. Halsell et al., 63 Okla. 203, 164 Pac. 458; Pratt Land Improvement Co. v. McClain, 135 Ala. 452, 33 South. 185; Nichol v. Hayes, 20 Ind. App. 369, 50 N. E. 768; Stone v. Montgomery, 35 Miss. 83; Booker v. Wingo, 29 S. C. 116, 7 S. E. 49.

Inadequacy of consideration, much less a failure to pay the purchase price, is not sufficient to justify a court of equity in setting aside a deed regularly executed. Welch v. Ellis, 63 Okla. 158, 163 Pac. 321; McKeever v. Carter, 53 Okla. 360, 157 Pac. 56. If the consideration is inadequate, the vendor must bear the loss, as the court cannot contract for the parties; but if it has not been paid, he may sue and recover it.

Counsel contends in his brief that Holbrook sustained a relation of confidence and trust to Aggie Washington, in that he represented Dixon Washington on the criminal charge, and that he was the representative of all parties in the sale of the land; but this is not pleaded or relied on in the answer or cross-petition, and it is a well-settled rule that in actions for fraud growing out of fiduciary relations the existence of the fiduciary relations must be alleged. 9 Cyc. of Pl. & Pr. 690; Feeney v. Howard et al., 79 Cal. 525, 21 Pac. 981; Golson et al. v. Dunlap et al., 73 Cal. 157, 14 Pac. 576.

The plaintiff in error tried the case in the lower court on the theory that Holbrook was incompetent as a witness, because of his relations to the parties, and that the deed was fraudulent and void because of such relations, and having adopted that theory, this court has held in numerous cases that it cannot be changed on appeal. Clark v. Farmers' State Bank, 48 Okla. 592, 149 Pac. 1189; Bouton v. Carson, 51 Okla. 579, 152 Pac. 131; Western Silo Co. v. Cousins, 76 Okla. 154, 184 Pac. 92; Pine Belt Lumber Co. v. Riggs, 80 Okla. 28 193 Pac. 990; Gibson v. Rappolee, 86 Okla. 100, 206 Pac. 825.

Action for fraud to set aside conveyance must be promptly brought upon discovery of the fraud, unless the parties are laboring under some disability which would prevent the bringing of the action. In the case at bar, Aggie Washington admits in her pleading that for a year she had known the defendant in error was claiming title to the land. She was under no disability that would prevent her from bringing suit immediately upon this discovery, but she took no action and, as to why she did not, there is no explanation.

It is contended that there is a defect in parties plaintiff in that the evidence shows that William P. Morton is joint owner of the land. William P. Morton and Walter W. Morton were associated in business, and had been for a number of years, and William P. Morton conducted the negotiations for the land and took title to Walter W. Morton, and if William P. Morton is a joint owner, Walter W. Morton holds the title in trust for him to the extent of his interest; and, under section 211, Comp. Stats. 1921, may prosecute the action in his own name, and William P. Morton will be concluded by the judgment of the court in the premises as effectually as though he were a party. Black v. Donelson, 79 Okla. 299, 193 Pac. 424.

We have carefully reviewed all the evidence, as is the duty of the court in equity cases, and are convinced that it fairly preponderates in favor of the judgment of the trial court. As to the weight of the evidence, the rule is well established that:

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumptions." Moore v. Adams, 26 Okla. 48, 108 Pac. 392; Owen v. United States Surety Co., 38 Okla. 123, 131 Pac. 1091; Rogers v. Harris, 76 Okla. 215, 184 Pac. 459.

The judgment of the trial court is affirmed, and the case remanded, with directions.

McNEILL, V. C. J., and NICHOLSON, COCHRAN, and HARRISON, JJ., concur.