WALTON W. SULLIVAN AND CHARLOTTE R. SULLIVAN, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. SAM NAI-MAN, INDIVIDUALLY AND TRADING AS PETRO OIL BURNER CO. OF ELIZABETH, AND ARTHUR CONRAD, DEFENDANTS-APPELLANTS.

Argued January 19, 1943—Decided June 17, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellants, *Clarick & Clarick* (*Jacob R. Mantel,* of counsel).

For the respondents, *Lum, Fairlie & Wachenfeld* (*Charles S. Barrett, Jr.,* of counsel).

The opinion of the court was delivered by

HEHER, J. Plaintiffs sued to recover damages for negligence in the performance of an undertaking by defendant Naiman to make certain repairs and adjustments to an oil burner set up in their dwelling house in Roselle Park. The house was damaged by fire. Conrad was Naiman's servant assigned to do the work. The District Court Judge, sitting without a jury, resolved the issue in favor of plaintiffs; and defendants appeal from the consequent judgment.

The first point made is that there was error in the denial of defendants' motion for a nonsuit on the ground that plaintiffs and their mortgagee had received full indemnification for the loss from the Concordia Fire Insurance Company of Milwaukee, their insurer against damage by fire, and therefore the right of action, if any, is by subrogation exclusively vested in the insurer, and that, at all events, the insurer, as "the real party in interest, must join in the suit"—citing *R. S.* 2:27-24.

But there has not been indemnification in the strict, technical sense. The state of the case settled by the trial judge discloses that, after the loss had been sustained, the insurer made to plaintiffs and their mortgagee "a loan, without interest," of the money equivalent of the loss, under a stipulation providing for its repayment "only in the event and to the extent that any net recovery is made by them" from a third person on account of the loss, which recovery was pledged "as security for such repayment," and obligating the borrower "to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such" third person "through whose negligence the * * * loss was caused. or who may otherwise be responsible therefor, with all due diligence," in their own names, "but at the expense of/and under the exclusive direction and control" of the insurer.

This would seem, in substance and effect, to secure to the insurer merely the protection afforded by general law, independently of special agreement, after indemnification in fact has been made, *i. e.*, the preservation to the insurer, under

the doctrine of subrogation, of the insureds' claim against the tortfeasors. It has the sanction of usage where essential to serve the legitimate interests of the parties. It constitutes a valid exercise of the fundamental right of liberty of contract. *Vide Fire Association of Philadelphia* v. *Shellenger,* 84 *N. J. Eq.* 464; *Luckenbach* v. *McCahan Sugar Refining Co.,* 248 *U. S.* 139; 39 *S. Ct.* 53; 63 *L. Ed.* 170.

And, even though the "loan" thus made be deemed in the nature of an unconditional indemnity under the policy, the action was properly instituted in the names of the insureds. Subrogation is a device of equity, imported from the civil law, to serve the interests of essential justice between the parties; but it was not unknown to the courts of common law jurisdiction. If there was indemnification in fact here, the insurer was thereby subrogated to the rights of the insureds against the tortfeasors, and it may on well settled principles proceed against them in the names of the insureds, even without their consent. *Monmouth Co. Fire Insurance Co.* v. *Hutchinson and C. & A. R. R. Co.,* 21 *N. J. Eq.* 107; *Fire Association of Philadelphia* v. *Wells,* 84 *Id.* 484; *Weber* v. *Morris and Essex Railroad Co.,* 35 *N. J. L.* 409; *Martin* v. *Lehigh Valley Railroad Co.,* 90 *Id.* 258. At common law, the insurer's right of action by subrogation is enforceable in the name of the insured for the use of the insurer. The insurer recovers only in the right of the insured. Here, the policy contained an express reservation to the insurer of the right of subrogation upon payment of the loss; and the *quantum* of the loss does not exceed the insurance coverage.

There is no occasion to consider the question of whether the insurer may, by force of *section* 2:27-24, *supra,* join with the insureds as a party plaintiff in an action against the tortfeasors. That provision is permissive merely.

It is also assigned for error that there was no evidence whatever to sustain the finding of negligence that is implicit in the judgment. This point is likewise intenable.

The state of the case reveals evidence tending to show that, on March 3d, 1941, the oil burner was not functioning properly, and that Naiman undertook to correct the deficiency. For this purpose, he dispatched his servant, Conrad, to plain-

tiffs' premises. Conrad found "a smoky fire" in the burner, and he "adjusted the fan." Two days later the burner emitted "an oil odor," and the following day a considerable quantity of oil was found on the cellar floor. Apparently, the burner was not then in operation, for the house was unheated. The condition was made known to Naiman; and he again sent Conrad to the premises. Conrad "turned on the ignition switch" and "pushed the relay switch on the oil burner." Thereupon, "the burner started with a large flame." The fire continued for an hour. Conrad removed the "cover and doors from the oil burner and the door which opened directly into the fire box." Meanwhile, smoke in volume came from the burner. While he was so engaged, Naiman called Conrad on the telephone, and directed him to proceed immediately to "another job," notwithstanding Conrad's insistence that he could not then leave plaintiffs' premises "because of the fire in the oil burner." Conrad informed Mrs. Sullivan that his employer had stated that "as long as the fire was confined to the fire box it would burn itself out," and had ordered him to "leave at once." He did as he was directed, informing Mrs. Sullivan that he would return as soon as he had completed the work thus assigned to him. Within an hour after his departure, and before his return, flames came from "all of the openings" of the burner and ignited the building. The fire was extinguished by the local fire department. The fire chief found that the "jacket" of the oil burner had been "dismantled," and that the "coal door opening into the fire box was at the other end of the cellar, approximately twenty feet distant." Flames were coming from the burner. The rafters and ceiling were burning. There was oil on the cellar floor. A mechanical expert called as a witness by the defense conceded that "it would be bad practice for a repairman to leave a job while a fire was in progress in the oil burner." The fire damage to the house totaled $475.75, and the cost of repairs to the burner was $120.75.

Thus it was open to the trier of the facts to find that Conrad had left the premises while there was an uncontrolled fire in the partially dismantled burner and oil in quantity upon the floor; and that he did not exercise the care which a

reasonably prudent person would have practiced under like circumstances. On appeal from a judgment of the District Court, findings of fact on conflicting evidence are conclusive. *R. S.* 2:32-202.

The judgment is accordingly affirmed, with costs.