C & C TILE COMPANY, INC., a Corporation et al., Appellants,

v.

INDEPENDENT SCHOOL DISTRICT NUMBER 7 OF TULSA COUNTY, Oklahoma, a School District lying within Tulsa and Osage Counties, doing business as Skiatook Public School, Appellee.

No. 45066.

Supreme Court of Oklahoma.

Oct. 24, 1972.

Covington, Gibbon & Poe, Tulsa, for appellant, C & C Tile Co., Inc.

Rucker, Tabor, McBride & Hopkins, Tulsa, for appellants, Kentile Floors, Inc. and Ellis F. Hall.

Grigg & Richards, Tulsa, for appellant, Atlantic Richfield Co.

Green, Feldman & Hall, by William S. Hall, Tulsa, for appellee.

HODGES, Justice.

This case involves an action for recovery of fire damage to a school building located in Osage County. There are two questions of law certified in this controversy.

The first question concerns the application of the statute of limitations to plaintiff's cause of action. Appellee filed an action in Osage County using the correct name of party plaintiff within one year of dismissal of the same cause of action which had been erroneously filed in Tulsa County under incorrect name of party plaintiff. The subsequent action is barred by the statute of limitations unless dismissal for lack of venue constitutes failure other than on the merits and as such enti-

tles appellee as correctly named party plaintiff to the saving provisions of 12 O.S.1971 § 100.

The superintendent, acting for Skiatook Public Schools, entered into a loan trust receipt with the insurer acknowledging an interest free loan in the exact amount of the loss. The loan was to be repaid solely from the net proceeds of any recovery against any carrier, bailee, insurer, or other third party liable for the loss. The agreement also purported to establish a trust whereby any recovery would be held by the insured as trustee for the insurer. The determination to be made is whether under these circumstances the school district is a real party in interest.

On August 2, 1966, the Skiatook Jr. High School in Osage County was damaged by fire. The superintendent of Skiatook Public Schools executed two identical Loan and Trust Receipts with Insurance Company of North America on August 26, and August 30, 1966, which acknowledged receipt of $84,647.00 and $89,764.00 respectively. The receipt of August 26 was signed "Skiatook Public Schools by Charles A. Marrs." The trust loan receipt of August 30, 1966, is set forth below:

"THE UNDERSIGNED hereby acknowledge(s) receipt of $84,764.00 from —INSURANCE COMPANY OF NORTH AMERICA—as a loan without interest (not as a payment) repayable solely out of the net proceeds of any recovery of the property mentioned below, and out of any net recovery made against any carrier, bailee, insurer, or other third party liable for the loss mentioned below; and as trustee(s) of an express trust the undersigned agree(s) to hold in trust from said Insurance Company all such property and monies so recovered, and all rights for the recovery thereof. The undersigned guarantee(s) that they are (he or it is) the person(s) entitled to recover such property and to pursue such claims against said third parties; and the undersigned hereby irrevocably appoint(s) said Insurance Company as agent and attorney-in-fact of the undersigned with full power to collect, enforce, compromise, release and dispose of such property, claims and recoveries through attorneys and representatives of the said Insurance Company's own selection, by legal proceedings or otherwise, all in and with the full co-operation of the undersigned, but at the sole expense of the Insurance Company; and the undersigned undertakes to execute such documents as may be necessary to carry out the purpose hereof.

DATED Aug. 30, 1966

/S/ Charles A. Marrs
Skiatook Public Schools

Witness:
/S/ Sybil E. Marlow
File No. _____
Draft No. _____
Policy No. _____

Description of Property and Loss: (Marks and numbers, ship or other conveyance, boyage, date, place and nature of loss.)

_____
_____
_____"

An action to recover damages was filed June 13, 1967, in Tulsa County, Oklahoma, by Independent School District Number 7 of Osage County, Oklahoma. The petition alleged in Paragraph II that:

"Plaintiff is the owner of one certain Public Junior High School premises located at 600 South Osage Street, Skiatook, Oklahoma, and same is for the use and benefit of the children in the vicinity in Tulsa and Osage counties."

Evidence was submitted showing that the Board of Education of the school district had contracted as Board of Education, Independent School District No. 7, Skiatook, Osage County, Oklahoma.

The deposition of the superintendent of schools was taken August 31, 1967. At that time, it was disclosed that although the School District was "identified" as "Osage 7", in fact it was a legal entity of

Tulsa County. Therefore, the correct appellation should have been Independent School District Number Seven of Tulsa County.

An oral motion to amend the petition to clarify the name of party plaintiff was made at the pre-trial conference. A written Motion To Amend Petition was filed June 13, 1969, but was never acted upon by the court.

The District Judge of Tulsa County dismissed plaintiff's cause of action June 27, 1969, for lack of venue after it was determined by all parties that 600 South Osage Street was the boundary line between Tulsa and Osage Counties. The Junior High School premises were located to the west of Osage street, completely within Osage County.

An action was brought in Osage County naming "Independent School District Number 7 of Tulsa County, Oklahoma, a school district lying within Tulsa and Osage counties, doing business as Skiatook Public Schools" as party plaintiff on July 16, 1969. Paragraph III of appellee's petition contained the identical language of Paragraph II of the petition filed in Tulsa County.

Appellants filed special demurrers raising the defense of the statute of limitations and the question of real party in interest. The trial court overruled these motions and certified its order for an immediate appeal to the Supreme Court pursuant to 12 O.S.1971 § 952(b)(3). Certiorari was granted.

Appellants contend that the initial cause of action was never properly commenced in Tulsa County because the court lacked venue. They allege that summons was not issued by a proper court as required by 12 O.S.1971 § 151, and as the result, appellants were never served. Therefore, the appellants contend, the action in Tulsa County did not toll the statute of limitations and the case should be dismissed.

The statute relied upon by appellants is not controlling in the case at bar. Chapter 3, 12 O.S.1971 is the specific section of civil procedure which pertains to limitation of actions. It is provided by 12 O.S.1971 § 97 of that chapter that an action shall be deemed commenced, within the meaning of the article, as to each defendant at the date of the summons which is served on him, or on a codefendant, who is a joint contractor or otherwise united in interest with him. (The article contains 12 O.S.1971 §§ 91–102).

The United States Supreme Court in Goldlawr, Inc., v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) in interpreting 28 U.S.C.A. § 1406(a), a venue statute, held that filing of a lawsuit shows proper diligence on the part of the plaintiff sufficient to initiate and toll the statute of limitations. In that case, the court did not have personal jurisdiction over the defendants. They were not residents of, transacting business in, and could not be found in the state where the action was first filed.

■ Although this court has previously held in Griesel v. Favian, 184 Okl. 42, 84 P.2d 634 (1938) that the prosecution of an action in good faith even before a court without jurisdiction tolls the statute of limitations, it is not prepared to accept that mere filing of a lawsuit accomplishes the same. A lawsuit must be commenced in due time and defendants served with summons in accordance with 12 O.S.1971 § 97 in order for plaintiff to avail himself of the saving provisions of 12 O.S.1971 § 100; Myers v. Kansas, Okla. & Gulf Ry. Co., 200 Okl. 676, 199 P.2d 600, 602 (1948).

■ An action is deemed commenced under this statute when the plaintiff properly endeavors to procure service on defendant, provided that such attempt is followed by service of summons on defendant within sixty days. Kile v. Cotner, 415 P.2d 961 (Okl.1966).

■ It is not within the purview of the statute to penalize parties for making a bad guess as to where venue properly lies. An action filed in good faith, even in a court lacking proper venue, tolls the statute of limitations. The steps taken in the original action in Tulsa County were suffi-

cient to commence the action. A dismissal for lack of venue constitutes a failure unrelated to the merits of the controversy, and as such falls within the ameliorative relief accorded by 12 O.S.1971 § 100.

Appellants further contend the appellee cannot avail itself of the protection provided in 12 O.S.1971 § 100, which permits a party to refile an action within one year because the party plaintiffs in the two actions do not have the same substantial or legal identity. Although the party plaintiff is designated differently, the two petitions contain the same language in identifying party plaintiff.

The statute which permits institution of new action within one year after prior action fails otherwise than on the merits is remedial, and should be liberally construed, Meshek v. Cordes, 164 Okl. 40, 22 P.2d 921 (1933).

The theory of the limitation statutes is that a defendant be given notice within a certain period that he will be called upon to defend a certain action, and that he be given sufficient notice to adequately prepare. If this is done within the statutory period, the bringing of a subsequent action in the name of correct party plaintiff which does not substantially change the claim or allege a new cause of action does not harm defendant. Saint Paul Fire and Marine Insurance Co. v. Spann, 355 P.2d 567 (Okl.1960).

A petition which does not allege a new or different cause of action, or change the claim of plaintiff relates back to the original petition. The bar of statute of limitations is suspended during the interim. Weston v. Acme Tool, Incorporated, 449 P.2d 887 (Okl.1969).

This court held in Midland Valley Ry. Co. v. Townes, 179 Okl. 136, 64 P.2d 712 (1937) that an action filed by the administrator of the estate for wrongful death after the running of the statute of limitations but within one year after dismissal without prejudice of an action filed by the widow was in all theories and respects the same,

and was not barred by the statute of limitations. Substitution of beneficiaries as plaintiffs instead of trustee was also permitted in American National Bank of Enid v. Crews, 191 Okl. 53, 126 P.2d 733 (1942).

The party plaintiff in the new action must be substantially the same, suing in the same right after a failure other than on the merits. It is not essential that the party plaintiff in both cases be the same eo nomine but that they be essentially the same. Haught v. Continental Oil Co., 192 Okl. 345, 136 P.2d 691 (1943).

We agree with and adopt the language from Boatman v. Thomas, 320 F. Supp. 1079, 1080 (D.C.J.D.Pa.1971) which cites United States v. A. H. Fischer Lumber Co., 162 F.2d 872 (4th Cir. 1947) as follows:

"A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice. * * * If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else."

The court has wide discretion in permitting the amendment of the name of a party plaintiff. The restrictive language of 12 O.S. 1971 § 317 requires only that the amendment does not substantially change the cause of action or prejudice the opposing party. Morris v. Leverett, 434 P.2d 912 (Okl.1967). The District Court in Tulsa County should have sustained appellee's motion to amend the name of party plaintiff before dismissing the action for lack of venue.

The action subsequently filed in Osage County by correctly named party plaintiff did not set up a new cause of action but merely showed the proper party plaintiff so as to bar the statute from running in favor of defendant. The effect of the substituted name of party plaintiff was to correct the misnomer of the party who

had already been in court in Tulsa County but through mistake or inadvertence had brought the action in the name of "Osage 7" instead of "Tulsa 7". There was never any doubt as to the location of the building, the happening of the fire, or the actual identity of the plaintiff. Appellants suffered no prejudice by the filing of the succeeding action in Tulsa County.

We find no merit in defendants contention that appellee's cause of action is barred by the statute of limitations.

Appellant alleges that the loan trust receipt is a subterfuge to avoid the real party in interest statute, and that the superintendent did not have the authority to enter into the agreement because it was not sanctioned by the board of education. The question of the validity of a loan trust receipt is one of first impression in this jurisdiction.

■ The deposition of the superintendent appears to reflect that the board did know of the private agreement and the circumstances thereof. In any event, the board accepted payment for the use and benefit of the school district. Even without an official board meeting, if proper officers of a school district officially enter into a written contract the school district will be deemed to have ratified it and be bound thereby if it receives and retains the full benefits. D'Yarmett v. School Dist. No. 27, Canadian County, 72 Okl. 124, 179 P. 20 (1919). Board of Ed. of Town of Carney v. News Dispatch Printing & Audit Co., 117 Okl. 226, 245 P. 884 (1926).

■ There are numerous public policy considerations in favor of declaring a loan trust receipt to be valid. The insurance premiums which affect all citizens are determined by the success the insurers have in recovering against tort feasors. Earlier settlement of claims is also possible with the utilization of the receipt. The primary purpose of the loan trust receipt, however, is to prevent disclosure of plaintiff's insurance to the jury. It is a device conceived to afford the same protection and insula-

tion from prejudice which is presently so carefully preserved for the defendant.

This court has consistently treated as anathema the mention of insurance held by defendant. Matchen v. McGahey, 455 P.2d 52 (Okl.1969).

The Delaware court in upholding the validity of a loan receipt in Steenburg v. Harry Braunstein Inc., 6 Terry 588, 45 Del. 588, 77 A.2d 206, 208 (1950) refused to act inconsistently toward the parties and would not require insurer to be named party plaintiff. The court stated:

"Why, then, should I exercise my discretion in such an inconsistent manner as to compel an insurance company openly to reveal itself as an interested party Plaintiff when the settled policy of our Courts is just to the contrary in a case where a Defendant is insured?

■ The instrument in the case at bar purports to represent not only a loan receipt, but to establish an express trust. For an express trust to be created, there must be a trustee designated and a present intention to create a trust by the party having the legal and equitable control of the subject matter. Intention is necessary at the time of the execution of the trust, but it may be manifested by subsequent actions of the parties. Tulsa Exposition and Fair Corp. v. Board of County Commissioners, 468 P.2d 501, 508 (Okl.1970).

It certainly would have shown better form had the parties troubled themselves to complete the loan trust receipt by inserting the property description in the blanks provided for that purpose. However, the subsequent action of the parties showed intent sufficient enough to carry out the provisions of the trust.

■ A trust in relation to realty or personalty may be created for any purpose in which a contract may be made. 60 O. S.1971 § 175.2. The trustee of an express trust is authorized by 60 O.S.1971 § 175.24 (E) to compromise, contest, arbitrate, or settle any and all claims of the trust estate. He is further authorized by 60 O.S.1971 §

175.24 (J) to do any other lawful acts not forbidden by the trust agreement or inconsistent with the Oklahoma Trust Act.

There is precedent for the insured to bring the cause of action in his own name as trustee for the insurer. The court held in McMahan v. McCafferty, 205 Okl. 656, 240 P.2d 443, 446 (1952) that where plaintiff has been paid in full by insurer and is not entitled to recover anything further, the action should be brought by the insurer in its own name, *or by the insured as trustee for the insurer.* (Emphasis ours).

Stevens v. Sharpe, 183 Okl. 312, 82 P.2d 672 (1938); Mortgage Bond Co. v. Stephens, 181 Okl. 182, 72 P.2d 831 (1937); Washington v. Morton, 90 Okl. 142, 216 P. 457 (1923) and 12 O.S.1971 § 223 all provide that a trustee of an express trust may bring suit in his own name without naming the beneficiary.

■ The real party in interest is the one legally entitled to the proceeds of a claim in litigation. Okmulgee Coal Company v. Hinton, 95 Okl. 92, 218 P. 319 (1923).

■ Defendant has the statutory right to have a cause of action prosecuted against him by the real party in interest. He is entitled to be sued only by those having a cause of action against him. The concern of the defendant ends, however, when a judgment for or against the nominal plaintiff would protect him from any action on the same demand by another, and when, as against the nominal plaintiff he may assert all defenses and counterclaims available to him the same as if the claim were enforced by the real owner. Joplin v. Ely, 365 P.2d 735, 736 (Okl.1961); Stevens v. Sharpe, 82 P.2d p. 674 supra; Black v. Donelson, 79 Okl. 299, 193 P. 424, 427 (1920).

Any judgment obtained in the present case would conclude insurer's rights as completely as it would that of the school district. Defendant would not be in the position of being subjected to further suit.

■ Fire insurance is different from other forms of insurance in that the policy is statutory. According to the language of 36 O.S.1971 § 4803 an insurance company may require an assignment from the insured of all right of recovery against any party for the loss to the extent that payment is made by the company. This contractual verbiage places the policy within the exception of 12 O.S.1971 § 221 that a thing in action not arising out of contract shall not be assigned.

■ The insured and insurer are free to enter into additional agreements or to set up a trust agreement in order to best handle the collection of the loss. The parties fundamental right of liberty to contract, when done in a lawful manner in the absence of fraud is not to be dictated by the effect it might possibly have on defendant. This is a matter of business judgment to be determined by insured and insurer. Sullivan v. Naiman, 130 N.J.L. 278, 32 A.2d 589 (1943).

■ The reason parties choose to adopt a loan trust receipt is immaterial so far as defendant is concerned. His proper interest is with only one effect of the loan trust receipt—the location of title to the cause of action. Waterway Terminals Co. v. P. S. Lord Mechanical Contractors, 242 Or. 1, 406 P.2d 556, 559 (1965); Furrer v. Yew Creek Logging Company, 206 Or. 382, 292 P.2d 499, 503 (1956).

The Oklahoma statutory fire policy was adopted from the standard New York policy. Appellants cite Scarborough v. Bartholomew, 22 N.Y.S.2d 635 (N.Y. City Ct. 1940) and Simpson v. Hartranft, 157 Misc. 387, 283 N.Y.S. 754, 757 (1935) to support their position that loan trust receipts are shams. Neither of these cases contained trust agreements, and were decided prior to the amendment of the New York real party in interest statute, C.P.L.R.1950 § 1004. This statute now permits the trustee of an express trust or an insured person acting under a loan receipt, trust agreement, or other similar agreement to sue in his

own name without joining the beneficiary. The previous real party in interest statute did not permit either the trustee of an express trust or the insured person to do this. The validity of loan trust receipts, however, had been recognized prior to the statutory amendment in Balish v. Advance Fuel Oil Corp., 266 App.Div. 683, 40 N.Y.S.2d 410 (1943).

The amendment of the New York statute resolved any question of the right of an insured who received money from an insurer under a loan trust receipt to prosecute in his own name an action against a third party tort feasor. It also rendered immaterial the amount of loss covered by the loan receipt and the nature of the transaction as a loan or as an absolute payment of insurer's liability under the policy. Bond Stores, Inc. v. American Fidelity & Casualty Co., 133 N.Y.S.2d 297, 300 (N.Y. Sup.1954); Pike v. Balmar Const. Co., 200 Misc. 371, 106 N.Y.S.2d 641, 643 (1951).

Although the real party in interest statute in Oklahoma does not contain the language of the amended New York statute, we feel that when it is interpreted in connection with 36 O.S.1971 § 4803, the statutory fire policy, and 12 O.S.1971 § 223, which permits the trustee of an express trust to bring an action in his own name without naming the beneficiary, the same conclusion must be reached.

The school district, by virtue of the express trust agreement was the owner of the equitable and legal title. As trustee it was the real party in interest able to bring the cause of action without joining the beneficiary of the trust. The transfer of money by way of the loan trust receipt effected the same result as payment. Under a trust agreement, however, it is immaterial whether the money received by the trustee is denoted a loan or constitutes payment, so long as the school district is fully compensated for its loss. The insured property owner has an interest in the cause of action to fasten the responsibility for the tort where it belongs. We properly sanction the insured bringing the action in its own name as trustee for the use and benefit of insurer. City of New York Ins. Co. v. Tice, 159 Kan. 176, 152 P.2d 836, 842, 843 (1944).

Justice Brandeis in considering the validity of a loan receipt in Luckenbach v. W. J. McCahan Sugar Ref. Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918) stated:

"It is creditable to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

We believe that the cause of action was initiated by the real party in interest within the purview of our statutes. The order of the district court overruling the demurrers of defendants is sustained.

All Justices concur.