Marilyn HUGHES and Russell Hughes, Appellants,

v.

MAYO CLINIC, Dr. R.H. Fitzgerald, Dr. M.B. Hart, Dr. J.K. Bradway, Dr. Hernandez, St. Mary's Hospital, John Doe and ABC Corporation, Appellees.

ST. MARY'S HOSPITAL,

v.

Marilyn & Russell HUGHES.

No. 87–5057.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 3, 1987.

Decided Dec. 9, 1987.

Rehearing and Rehearing En Banc Denied Jan. 28, 1988.

Gary K. Wood, Minneapolis, Minn., for appellants.

Paul B. Klaas, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

LAY, Chief Judge.

This is a medical malpractice action in which jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332 (1982). Marilyn Hughes and her husband, Russell, citizens of Illinois, are suing the Mayo Clinic, Inc., et al. ("Mayo Clinic").[1] Mrs. Hughes' suit arises from a surgical procedure resulting in a total hip arthroplasty on July 12, 1984. On July 8, 1986 suit was filed in the United States District Court, District of Minnesota. Mayo Clinic and the several defendant doctors, however, were not served with copies of the summons and complaint until late afternoon on August 1, 1986. At 12:01 a.m. on August 1, Minn. Stat.Ann. § 145.682 (West Supp.1987) became effective, and that statute requires all plaintiffs filing medical malpractice claims in Minnesota to submit an affidavit by plaintiff's counsel verifying that an expert has reviewed the facts and is of the opinion that the defendants have deviated from the applicable standard of medical care. Minn.Stat.Ann. § 145.682(3)(a). It is conceded that the Hugheses did not submit such an affidavit. The fundamental issue is whether the Minnesota statute applies to a malpractice action filed in federal court prior to August 1, 1986.

The defendants filed an answer and simultaneously served a demand for an affidavit of expert review pursuant to Minn. Stat.Ann. § 145.682. Because the Hugheses could not locate an expert who would state that the defendants had deviated from the applicable standard of medical care, Mayo Clinic moved for summary judgment. In response to the Mayo Clinic's motion, the Hugheses urged that the action was commenced on July 8, 1986, before the Minnesota statute became effective, and, alternatively that the malpractice was so obvious, as demonstrated by the X ray, that no expert opinion was required under Minn.Stat.Ann. § 145.682. The Hugheses base their argument on the express language of rule 3 of the Federal Rules of Civil Procedure, which states that an action is "commenced" when the complaint is filed with the court.[2]

The district court, the Honorable Robert G. Renner, held that Minn.Stat.Ann. § 145.682 applied because the suit was not commenced under Minnesota law until the summons was served on the defendant. Minn.R.Civ.P. 3.01 (Supp.1987).[3] On this basis, the court granted the Mayo Clinic and other defendants summary judgment. Judge Renner also dismissed the Hughes' claim that the malpractice was so obvious as to obviate the need for expert review.[4] We reverse and remand the cause for further proceedings in the district court.

The district court reasoned that under *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), state law, rather than Fed.R.Civ.P. 3, governs the date of commencement. Since this court construes *Walker* differently than did the district court, however, we address

---

1. Mayo Clinic of Rochester, Minnesota, Dr. R.H. Fitzgerald, Dr. M.B. Hart, Dr. J.K. Bradway, Dr. Hernandez, St. Mary's Hospital, John Doe, and ABC Corporation.

2. Fed.R.Civ.P. 3 states in full: "A civil action is commenced by filing a complaint with the court."

3. Under 1986 Minn.Sess.Law Serv. Ch. 455 at 95 (West), Minn.Stat.Ann. § 145.682 applies "to all actions commenced on or after the effective date" of the statute. The effective date is August 1 at 12:01 a.m. because no different date was specified. Minn.Stat.Ann. § 645.02.

4. In view of our holding, we need not pass on this contention.

the two central cases that contributed to the ruling in *Walker: Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and *Ragan v. Merchants Transfer Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). The Court in *Walker* was faced with the precise question presented in *Ragan:* whether Fed.R.Civ.P. 3 was applicable in determining if a state statute of limitations was tolled. In *Ragan* the Court held that Fed.R.Civ.P. 3 did not toll a state statute of limitations where the state statute required personal service on a defendant before the action could be deemed commenced. In *Hanna*, however, the Court held that rule 4 of the Federal Rules of Civil Procedure determined the appropriate method of service rather than Massachusetts state law. *Hanna*, 380 U.S. at 474, 85 S.Ct. at 1145–46. There has existed much controversy since *Hanna* as to whether the two decisions could be reconciled. Although the *Hanna* Court distinguished *Ragan*, Justice Harlan stated that the two decisions could not be reconciled. *Hanna*, 380 U.S. at 476, 85 S.Ct. at 1146–47 (Harlan, J., concurring). It was not until *Walker* that the Supreme Court laid these arguments to rest.

The relevant facts in *Ragan* and *Walker* were similar. In both cases, the plaintiff failed to serve the defendants within the time provided by the relevant state statute of limitations. In both opinions the Court construed the policies expressed in *Erie* as dictating that compliance with Fed.R.Civ.P. 3 does not toll the state statute of limitations. *Walker*, 446 U.S. at 750–51, 100 S.Ct. at 1985–86; *Ragan*, 337 U.S. at 532–33, 69 S.Ct. at 1234–35. The rule that evolved from those cases is that where there is no direct clash between federal and state procedural law, and the state procedural rule is an integral part of the state scheme, the state law requirements must be met. The Court reasoned that Fed.R. Civ.P. 3 as applied in *Ragan* was not intended to be so broad in scope so as to toll a state statute of limitations. *Walker*, 446 U.S. at 750–51, 100 S.Ct. at 1985–86; *Ragan*, 337 U.S. at 533, 69 S.Ct. at 1234–35.

While the Court found that the facts in *Ragan* and *Walker* did not present a direct clash with state law, in *Hanna* the Court found a direct, irreconcilable conflict. *Hanna* involved Fed.R.Civ.P. 4(d)(1), which permits service of process at respondent's home by leaving the summons and complaint with someone of suitable age and discretion. The person served need not be the defendant. *Hanna*, 380 U.S. at 461, 85 S.Ct. at 1138–39; Fed.R.Civ.P. 4(d)(1). In *Hanna*, the service of summons was made on the defendant executor's wife pursuant to rule 4. The applicable state law, however, required service of process to be personally delivered to the defendant. While the Court in *Hanna* enforced the federal rule on service of process rather than the Massachusetts rule, *Walker* made clear that *Hanna* did not overrule *Ragan*.

In the present case, the district court held that *Walker* required dismissal because the affidavit of expert review requirement is an integral part of the state's medical malpractice scheme. After analyzing the policies raised in *Erie, Ragan, Hanna*, and *Walker*, however, we conclude that rule 3 of the Federal Rules of Civil Procedure governs the date from which the Hughes' suit was commenced. Since Minn. Stat.Ann. § 145.682 does not apply to suits commenced prior to August 1, 1986, the requirement of expert review does not apply to the Hughes' suit.

*Walker* instructs us that "[t]he first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court." *Walker*, 446 U.S. at 749–50, 100 S.Ct. at 1985. Justice Marshall, writing for the Court in *Walker*, also makes clear that only in cases of direct conflict between state and federal procedural rules does the *Hanna* analysis apply. *Walker*, 446 U.S. at 750 n. 9, 100 S.Ct. at 1985 n. 9. *Walker* does not require us to read Fed.R.Civ.P. 3 narrowly in order to avoid this conflict; rather, the Court instructs us that the federal rules are to be "given their plain meaning." *Id.* Thus, it is clear that rule 3 is sufficiently broad to control the issue of the date of the commencement of the action. Furthermore, there is a direct con-

flict between state and federal law as to the date of commencement.

While an analysis of *Ragan, Hanna,* and *Walker* supports our holding, it is helpful to consider in addition the purpose behind rule 3. The *Walker* Court quoted approvingly from Professors Wright and Miller's treatise on federal practice, which states: "Rule 3 simply provides that an action is commenced by filing the complaint and has as its *primary purpose* the measuring of time periods that begin running from the date of commencement; the rule does not state the filing tolls the statute of limitations." *Walker,* 446 U.S. at 750 n. 10, 100 S.Ct. at 1985 n. 10 (emphasis added) (quoting from 4 C. Wright and A. Miller, *Federal Practice and Procedure* § 1057, at 191 (1969)).

The Hughes' action does not present a tolling problem. Even so, Justice Marshall's discussion of the policies involved in construing a federal-state procedural rule conflict in *Walker* is helpful. The Court states:

> In contrast to Rule 3, the Oklahoma statute is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations. See *C & C Tile Co. v. Independent School District No. 7 of Tulsa County,* 503 P.2d 554, 559 (Okla.1972). The statute of limitations establishes a deadline after which the defendant may legitimately have peace of mind; it also recognizes that after a certain period of time it is unfair to require the defendant to attempt to piece together his defense to an old claim. A requirement of actual service promotes both of those functions of the statute. See generally *ibid; Seitz v. Jones,* 370 P.2d 300, 302 (Okla.1961). See also Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693, 730–731 (1974). It is these policy aspects which make the service requirement an "integral" part of the statute of limitations both in this case and in *Ragan.* As such, the service rule must be considered part and parcel of the statute of limitations.

*Walker,* 446 U.S. at 751–52, 100 S.Ct. at 1985–86 (footnotes omitted).

The Hughes' suit does not raise the same policy issues as those addressed in *Walker.*

Moreover, we find the *Hanna* rule controls the applicability of rule 3 in this narrow, singular instance because it does not contravene the policy factors behind *Erie.* In *Hanna,* the Court wrote that the outcome-determinative test in *Erie* and *York* had to be read with reference to the twin aims of *Erie:* "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna,* 380 U.S. at 468, 85 S.Ct. at 1142.

There was no forum shopping in this suit, and our holding will not promote forum shopping in the future. Here, as in *Walker,* there is no evidence that the plaintiffs filed in federal court in order to avoid those service requirements. The plaintiffs could have filed in state court, and, if they were aware of the new legislation, they could have sought an expedited service of process in the state court to assure service of summons before August 1. Furthermore, all suits commenced after August 1 will be governed by the Minnesota statute. Thus, there exists no great policy question governing future cases.

■ Second, there is no "inequitable administration of law" by our adherence to Fed.R.Civ.P. 3. If plaintiffs are unable to prove sufficient evidence of malpractice, they may face either summary judgment or a directed verdict. The best that might be said, by borrowing from *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), is that the Minnesota statute does not bear "on a State-created right vitally" and affects this diversity litigation only "formally or negligibly." *Guaranty Trust,* 326 U.S. at 110, 65 S.Ct. at 1470. Furthermore, the *Hanna* Court recognized, 380 U.S. at 467–74, 85 S.Ct. at 1141–46, as it did in *Guaranty Trust,* 326 U.S. at 108–11, 65 S.Ct. at 1469–71, and *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 555, 69 S.Ct. 1221, 1229–30, 93 L.Ed. 1528 (1949), that "the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial sys-

tems are not identic." *Guaranty Trust*, 326 U.S. at 108, 65 S.Ct. at 1469. Thus, where a federal rule clashes with a state rule, it is not critical that "it alters the mode of enforcing state-created rights," *Hanna*, 380 U.S. at 473, 85 S.Ct. at 1145, rather, it is critical that Congress be allowed "to prescribe housekeeping rules for federal courts even though some of these rules will inevitably differ from comparable state rules." *Id.* at 473, 85 S.Ct. at 1145. In a case of direct conflict, then, the federal rule of civil procedure will prevail over an applicable state rule of procedure.

For the reasons announced, the judgment of the district court is reversed and the cause remanded for further proceeding.